# NO. 23-10833

## In The
# United States Court Of Appeals
# For The Eleventh Circuit

**RICARDO ALBERTO MARTINELLI BERROCAL,**
*Plaintiff - Appellant,*

v.

**ATTORNEY GENERAL OF THE UNITED STATES,
U.S. SECRETARY OF STATE, THOMAS B HEINEMANN,**
**Office of the Legal Adviser for Law Enforcement
and Intelligence, United States Department of State,**
*Defendants - Appellees.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA

———————

## BRIEF OF APPELLANT

———————

Charlie E. Carrillo, Esq.
CARRILLO & CARRILLO, LLC
259 W. Patrick Street
Frederick, MD  21701
(240) 575-5117

*Counsel for Appellant*

Todd C. Yoder
MARKUS/MOSS, PLLC
40 Nw 3rd St PH1
Miami, FL  33128
(305) 379-6667

*Counsel for Appellant*

*Gibson*Moore Appellate Services, LLC
206 East Cary Street ♦ P.O. Box 1406 (23218) ♦ Richmond, VA  23219
(804) 249-7770 ♦ www.gibsonmoore.net

**23-10833** *Berrocal v. Attorney General of the United States, et al*

<u>C**ERTIFICATE OF** I**NTERESTED** P**ARTIES**</u>

Pursuant to Eleventh Circuit Rule 26.1-1, the Appellant certifies, to the best of his knowledge, the following is a comprehensive list of trial judges, attorneys, individuals, groups, companies, partnerships, associations or corporations that have a vested interest in the outcome of this case or appeal:

Blinken, Antony J., United States Secretary of State, Defendant-Appellee

Bloom, Beth, *District Court Judge for the Southern District of Florida*

Briggs, Jamie M*., Attorney for Defendants-Appellees*

Boynton, Brian*, Attorney for Defendants-Appellees*

Carrillo, Charlie, *Attorney for Plaintiff-Appellant*

Enlow, Courtney, *Attorney for Defendants-Appellees*

Garland, Merrick B., Attorney General of the United States, *Defendant-Appellee*

Haciski, Rebecca,*Attorney for Defendants-Appellees*

Heinemann, Thomas B.,*Defendant-Appellee*

Lapointe, Markenzy, *Attorney for Defendants-Appellees*

Lewis, Benjamin R.,*Attorney for Defendants-Appellee*

Martinelli-Berrocal, Ricardo Alberto, *Plaintiff-Appellant*

Monaco, Kerry,*Attorney for Defendants-Appellees*

Swingle, Sharon,*Attorney for Defendants-Appellees*

Torres, Edwin G., *Chief Magistrate Judge for the Southern District of Florida*

Yelin, Lewis, *Attorney for Defendants-Appellees*

Yoder, Todd C., *Attorney for Plaintiff-Appellant*

Date: May 15, 2023

/s/ CHARLIE E. CARRILLO
CHARLIE E. CARRILLO, ESQ.
Carrillo & Carrillo, LLC.
259 W. Patrick Street, Frederick, MD 21701
P: (301) 378-8595 | F: (240) 680-2762
M: (202) 808-4074 | E: cc@carrillobrux.com

/s/ TODD YODER
TODD YODER, ESQ.
Markus/Moss PLLC
40 NW 3rd St., PH 1, Miami, FL 33128
Email: tyoder@markuslaw.com
Phone: (305) 379-6667

*Counsel for Plaintiff-Appellant*
  *Pres. Martinelli*

## STATEMENT REGARDING ORAL ARGUMENT

Plaintiff-Appellant Ricardo Alberto Martinelli Berrocal respectfully requests oral argument pursuant to Fed. R. App. P. 34(a)(1) and Rule 28-1(c) of the Eleventh Circuit Rules. He submits that the issues presented by this appeal are novel and difficult questions of law based on Article III standing as well as standing under the Treaty Between the United States of America and the Republic of Panama Providing for the Extradition of Criminals. Accordingly, Plaintiff believes that oral argument would assist this Court in making its decision in this matter.

Date: May 15, 2023

/s/ CHARLIE E. CARRILLO
CHARLIE E. CARRILLO, ESQ.
Carrillo & Carrillo, LLC.
259 W. Patrick Street, Frederick, MD 21701
P: (301) 378-8595 | F: (240) 680-2762
M: (202) 808-4074 | E: cc@carrillobrux.com

/s/ TODD YODER
TODD YODER, ESQ.
Markus/Moss PLLC
40 NW 3rd St., PH 1, Miami, FL 33128
Email: tyoder@markuslaw.com
Phone: (305) 379-6667

*Counsel for Plaintiff-Appellant*
  *Pres. Martinelli*

# TABLE OF CONTENTS

PAGE:

CERTIFICATE OF INTERESTED PARTIES ........................................................................i

STATEMENT REGARDING ORAL ARGUMENT ........................................................... iii

TABLE OF CONTENTS ............................................................................................iv

TABLE OF AUTHORITIES .........................................................................................vi

JURISDICTIONAL STATEMENT ...................................................................................1

STATEMENT OF THE ISSUE(S) ..................................................................................2

STATEMENT OF THE CASE .......................................................................................3

    Statement of Facts.........................................................................................3

    Standard of Review........................................................................................7

    Legal Standards ............................................................................................7

        ARTICLE III STANDING ..........................................................................7

        LACK OF SUBJECT MATTER JURISDICTION ............................................8

SUMMARY OF THE ARGUMENT ................................................................................9

ARGUMENT ..........................................................................................................11

    I.    President Martinelli has Article III Standing .....................................11

        A.    FAIRLY TRACEABLE ..................................................................11

        B.    REDRESSABILITY......................................................................15

            i.    There is a significant likelihood that Plaintiff's injuries will be redressed if Plaintiff receives a favorable ruling from the Court......................................16

ii.     It is the effect on the defendants...not an absent third party-that redresses the Plaintiff's injury, whether directly or indirectly ..........................................20

II.    President Martinelli has standing under the Rule of Specialty ...........21

    A.    STANDING UNDER THE TREATY ...................................................22

    B.    THE DOCTRINE OF SPECIALTY.....................................................22

        i.     Issues with the District Court's Analysis .......................24

        ii.    Role and Responsibility of the U.S. Department of State ...............................................................................24

    C.    THE DISTRICT COURT NEGLECTED TO INITIALLY EXAMINE THE PLAIN LANGUAGE OF THE TREATY TO DETERMINE WHETHER IT GRANTS AN INDIVIDUAL RIGHT TO PRESIDENT MARTINELLI..................................................................................26

        i.     The Treaty.......................................................................26

        ii.    Interpretation of the Treaty.............................................28

    D.    RELEVANT CASE LAW.................................................................29

    E.    THE STATUTE OF LIMITATIONS UNDER THE TREATY .................30

        i.     Individual Rights Under Treatises...................................32

    F.    MR. HEINEMANN FAILED TO FOLLOW THE STATE DEPARTMENT'S OWN PROCEDURES WHEN HE SUBMITTED AN UNOFFICIAL RESPONSE STATING THAT THE RULE OF SPECIALTY NO LONGER APPLIED...................................................33

CONCLUSION........................................................................................................36

CERTIFICATE OF COMPLIANCE ...........................................................................37

CERTIFICATE OF FILING AND SERVICE.................................................................38

PAGE(S):

CASES:

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)......................................................................7

*Bennett v. Spear*,
520 U.S. 154 (1997)....................................................................12

*Berrocal v. Garland*,
No. 22-cv-23511,
2023 U.S. Dist. LEXIS 32227 (S.D. Fla. Feb. 27, 2023)........................8, 22

*Collins v. O'Neil*,
214 U.S. 113 (1909).....................................................................29

*Colonial Pipeline Co. v. Collins*,
921 F.2d 1237 (11th Cir. 1991) ....................................................8

*Cosgrove v. Winney*,
174 U.S. 64 (1899)......................................................................30

*Duke Power Co. v. Envtl. Study Grp.*,
438 U.S. 59 (1978)......................................................................11

*Eastern Airlines, Inc. v. Floyd*,
499 U.S. 530 (1991)....................................................................26

*Edye v. Robertson*,
112 U.S. 580 (1884)....................................................................27

*Factor v. Laubenheimer*,
290 U.S. 276 (1933)....................................................................27

*Fed. Election Comm'n v. Cruz*,
142 S. Ct. 1638 (2022)..................................................................7

*Focus on the Family v. Pinellas Suncoast Transit Auth.*,
344 F.3d 1263 (11th Cir. 2003) ....................................................14

*Fujitsu Ltd. v. Fed. Express Corp.*,
247 F.3d 423 (2d Cir. 2001) ........................................................19

*Garcia-Bengochea v. Carnival Corp.*,
57 F.4th 916 (11th Cir. 2023) ........................................10, 15, 16

*Garcia-Godos v. Warden*,
853 F. App'x 404 (11th Cir. 2021).......................................... 26-27

*Harrell v. Fla. Bar*,
608 F.3d 1241 (11th Cir. 2010) ....................................................15

*Havana Docks Corp. v. MSC Cruises SA Co.*,
484 F. Supp. 3d 1177 (S.D. Fla. 2020)....................................11, 14

*In re Nunez*,
No. 10-24020-MC,
2011 U.S. Dist. LEXIS 7321 (S.D. Fla. Jan. 26, 2011)................31

*Jacobson v. Florida Sec'y of State*,
974 F.3d 1236 (11th Cir. 2020) .............................................*passim*

*Kuhlman v. United States*,
822 F. Supp. 2d 1255 (M.D. Fla. 2011) ........................................8

*Lawrence v. Dunbar*,
919 F.2d 1525 (11th Cir. 1990) ....................................................8

*Leiva v. Warden*,
928 F.3d 1281 (11th Cir. 2019) ..................................................26

*Lewis v. Governor of Ala.*,
944 F.3d 1287 (11th Cir. 2019) ............................................12, 15

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
572 U.S. 118 (2014)......................................................................11

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992) ................................................................................*passim*

*Made in the U.S.A. Foundation v. United States*,
  242 F.3d 1300 (11th Cir. 2001) ................................................................16

*McElmurray v. Consol. Gov't of Augusta-Richmond Cty.*,
  501 F.3d 1244 (11th Cir. 2007) ..................................................................8

*Morrison v. Amway Corp.*,
  323 F.3d 920 (11th Cir. 2003) ....................................................................8

*Muransky v. Godiva Chocolatier, Inc.*,
  979 F.3d 917 (11th Cir. 2020) ....................................................................7

*Sierra v. City of Hallandale Beach*,
  996 F.3d 1110 (11th Cir. 2021) ..................................................................7

*Simon v. Eastern Ky. Welfare Rts. Org.*,
  426 U.S. 26 (1976) ....................................................................................15

*Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Sys., Inc.*,
  524 F.3d 1229 (11th Cir. 2008) ..................................................................8

*Thole v. U.S. Bank N.A.*,
  140 S. Ct. 1615 (2020) ................................................................................7

*TransUnion LLC v. Ramirez*,
  141 S. Ct. 2190 (2021) ................................................................................7

*Trump v. Hawaii*,
  138 S. Ct. 2392 (2018) ..............................................................................11

*Turcios v. Delicias Hispanas Corp.*,
  275 F. App'x 879 (11th Cir. 2008) ..............................................................8

*United States v. Alvarez-Machain*,
  504 U.S. 655 (1992) ......................................................................22, 26, 32

*United States v. Belfast*,
  611 F.3d 783 (11th Cir. 2010) ..................................................................27

*United States v. Diwan*,
    864 F.2d 715 (11th Cir. 1989) .................................................................33, 34

*United States v. Duarte*,
    15-20540-CR, 2018 U.S. Dist. LEXIS 1257,
    2018 WL 310025 (S.D. Fla. Jan. 4, 2018)...............................................22, 23

*United States v. Duarte-Acero*,
    208 F.3d 1282 (11th Cir. 2000) ....................................................................26

*United States v. Mejia-Duarte*,
    780 F. App'x 730 (11th Cir. 2019)................................................................22

*United States v. Puentes*,
    50 F.3d 1567 (11th Cir. 1995) ................................................................22, 23

*United States v. Rauscher*,
    119 U.S. 407 (1886)...............................................................16, 21, 22, 32

*Uzuegbunam v. Preczewski*,
    141 S. Ct. 792 (2021)....................................................................................15

*Warth v. Seldin*,
    422 U.S. 490 (1975)......................................................................................26

**STATUTES:**

5 U.S.C. § 701, et seq..................................................................................1, 6

18 U.S.C. § 1956............................................................................................31

18 U.S.C. § 1957............................................................................................31

18 U.S.C. § 3282............................................................................................31

28 U.S.C. § 1291..............................................................................................1

28 U.S.C. § 1331..............................................................................................1

28 U.S.C. § 2201..............................................................................................1

**CONSTITUTIONAL PROVISIONS:**

CONST. POL. PAN., art. 159 (1972) ........................................................................16

**RULES:**

Fed. R. Civ. P. 12(b)(1)...........................................................................................6, 8

Fed. R. Civ. P. 12(b)(6)..............................................................................................8

Fed. R. Civ. P. 56 ......................................................................................................8

**OTHER AUTHORITIES:**

1 RESTATEMENT (THIRD) OF FOREIGN RELATIONS LAW OF THE UNITED STATES
   § 321 ...............................................................................................................18

Criminal Procedure Code of the Republic of Panama,
   Articles 29, 30, and 545.................................................................................13

Criminal Procedure Code of the Republic of Panama,
   Article 548 .....................................................................................................18

Mary-Rose Papandre, *Standing to Allege Violations of the Doctrine of*
*Specialty: An Examination of the Relationship between the*
*Individual and the Sovereign,*
   The University of Chicago Law Review, 62:1187.........................................21

Treaty Between the United States of America and the Republic of
Panama Providing for the Extradition of Criminals, U.S.-Pan.,
   May 25, 1904, 34 Stat. 2851..................................................................*passim*

U.S. Rev. Stat. § 5725 and art. 3 of the treaty of
   July 12, 1889, 26 Stat. 1508-9 .................................................................29, 30

Vienna Convention art. 26 .......................................................................................18

This matter arises under federal law, including international treaties, which means it was appropriately before the District Court for the Southern District of Florida ("the District Court"). The relevant treaty is the Treaty Between the United States of America and the Republic of Panama Providing for the Extradition of Criminals, U.S.-Pan., May 25, 1904, 34 Stat. 2851, ("the Treaty") which was ratified by the United States on May 12, 1905. The District Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question), 5 U.S.C. § 701, et seq. (Administrative Procedure Act ("APA")), and 28 U.S.C. § 2201 (Declaratory Judgment Act). The District Court's Order dismissing the case for lack of standing was a final order. Therefore, this Honorable Court has jurisdiction to decide the appeal pursuant to 28 U.S.C. § 1291.

<u>**STATEMENT OF THE ISSUE(S)**</u>

1.    Does President Martinelli possess Article III standing to bring his claims, specifically concerning the elements of traceability and redressability?

    A.    Can President Martinelli demonstrate that his alleged injury is fairly traceable to the actions of the U.S. Department of State and Mr. Thomas Heinemann ("Mr. Heinemann")?

    B.    Can President Martinelli demonstrate that his alleged injury would be redressed by a favorable decision from the Court?

2.    Does President Martinelli have standing under the Treaty to challenge the actions of the U.S. Department of State and Mr. Heinemann, particularly in relation to their determination on the applicability of the Rule of Specialty?

## Statement of Facts

Plaintiff-Appellant Ricardo Alberto Martinelli Berrocal ("Pres. Martinelli"), former President of Panama (2009-2014), was indicted by Panama on October 9, 2015, for alleged crimes committed during his presidency. ECF No. [1] ¶ 25. The Republic of Panama lodged an extradition request with the United States on September 26, 2016, detailing four charges against Pres. Martinelli. ECF No. [1] ¶ 27; ECF No. [1-8] at 2 (Criminal Case 138-15 "Pinchazos"). Pursuant to the Treaty, and following an order issued by Chief Magistrate Judge Edwin G. Torres, the United States Marshals Service arrested Pres. Martinelli on June 12, 2017. In a diplomatic communication sent on June 8, 2018, the U.S. Department of State notified the Embassy of Panama in Washington D.C. about the United States' approval of the extradition of Pres. Martinelli. The communication explicitly mentioned that the Rule of Specialty provision of the Treaty was applicable. ECF No. [1-8] at 4. Pres. Martinelli was extradited to the Republic of Panama on June 11, 2018. ECF No. [1] ¶¶ 31-32, 39.

On April 4, 2019, a letter was sent by Mr. Heinemann to Ms. Gina Lopez Candanedo ("Ms. Candanedo"), who at the time served as the Director of International Legal Affairs and Treaties at the Ministry of Foreign Affairs of Panama. In his correspondence, Mr. Heinemann detailed the process for seeking a

waiver from the United States to the Rule of Specialty protection. He clarified that Panama should only request this waiver when their Public Ministry, judiciary, or any pertinent authority plans to proceed with additional charges. Importantly, this request should be made prior to any decision to charge an individual (ECF No. [1-20]).

Subsequently, on April 9, 2019, Ms. Candanedo responded to Mr. Heinemann's letter. She confirmed receipt of his letter and acknowledged the agreement established between the United States and the Republic of Panama for requesting a waiver to the Rule of Specialty protection, as stipulated by Article VIII of the Treaty (ECF No. [33-5]).

After his extradition, Pres. Martinelli was acquitted of all charges in criminal matter 138-15 on August 26, 2019. ECF No. [1-14]. This acquittal also resulted in the lifting of the "personal safety measures" restricting his travel outside Panama. *Id.* ¶ 46; ECF No. [1-14] at 3. However, this acquittal was challenged by Panama, which filed an appeal just five days later, on August 31, 2019. ECF No. [1] ¶ 46.

On October 17, 2019, Ms. Kenia I. Porcell de Alvarado ("Ms. Porcell"), the former Attorney General of the Republic of Panama, made an inquiry to Mr. Heinemann regarding Pres. Martinelli's case. On December 12, 2019, Mr. Heinemann responded by acknowledging that on August 9, 2019, a Panamanian court had acquitted Pres. Martinelli. Additionally, Mr. Heinemann stated that, based

on his understanding, Pres. Martinelli had been allowed to travel outside of Panama since September 15, 2019. He further expressed his belief that, given the circumstances of Pres. Martinelli's case, the Rule of Specialty was no longer applicable. Mr. Heinemann asserted that Panama was free to pursue further prosecution for any pre-extradition crimes without requiring a waiver from the United States. ECF No. [1-21]. In this letter, Mr. Heinemann did not refer to the appeal filed by Panama in the criminal case 138-15.

The Superior Tribunal of Appeals overturned the acquittal in criminal case 138-15 on November 20, 2020, and ordered a new trial. ECF No. [1-17]. On July 2, 2020, and August 4, 2020, Pres. Martinelli was charged with two separate counts of money laundering, crimes allegedly committed prior to his extradition, with his movement again restricted to Panama.[1]

On December 2, 2020, the Ministry of Foreign Affairs of Panama was informed by the Embassy of the United States of America through Diplomatic Note No. 490 that Mr. Heinemann's opinion was officially recognized as the position of the U.S. Government. This diplomatic note included a copy of Mr. Heinemann's letter dated October 29, 2020, which was addressed to former Minister Alejandro Ferrer of the Ministry of Foreign Affairs. ECF No. [1-15].

---

[1] In the District Court's Opinion and Order, the court inadvertently listed the dates of the new charges as "July 2, 2022, and August 4, 2022." ECF [35] at 2.

Pres. Martinelli was again found not guilty on all charges in the criminal case 138-15, which was the subject of his extradition, on November 24, 2021 (ECF No. [1-18]). This verdict was certified as the final ruling for his case on April 20, 2022 (ECF No. [1-19])

Pres. Martinelli argues that Panama decided to prosecute him further for other crimes, not included in the original extradition and in violation of the Rule of Specialty, due to letters from Mr. Heinemann, Assistant Legal Adviser for the U.S. Department of State's Law Enforcement and Intelligence Unit, erroneously stating that the Rule of Specialty no longer applied. Pres. Martinelli requests a declaratory judgment under the Administrative Procedures Act ("APA") and the Declaratory Judgment Act on several points related to this issue.

The Government Defendants moved to dismiss the Complaint for lack of Article III standing, lack of subject matter jurisdiction, and failure to state a claim. ECF No. [27]. The District Court granted the Motion to Dismiss on February 27, 2023, under Fed. R. Civ. P. 12(b)(1) for lack of standing based on both Article III standing requirements of traceability and redressability as well as for lack of standing under the Treaty. In response, Pres. Martinelli timely appealed the decision on March 14, 2023.

## Standard of Review

The Appellate Court "review[s] de novo a district court's dismissal of a case for lack of standing." *Sierra v. City of Hallandale Beach*, 996 F.3d 1110, 1112 (11th Cir. 2021).

## Legal Standards

### ARTICLE III STANDING

"The requisite elements of Article III standing are well established...." *Fed. Election Comm'n v. Cruz*, 142 S. Ct. 1638, 1646 (2022). The plaintiff must show (1) "that he suffered an injury in fact that is concrete, particularized, and actual or imminent," (2) that the injury is traceable to the defendant's legal violation, and (3) "that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)). A plaintiff must support each element of standing with "the manner and degree of evidence required at the successive stages of the litigation." *Lujan* at 561. At the motion-to-dismiss stage, a plaintiff must allege facts that, taken as true, "plausibly" state that the elements of standing are met. *Thole v. U.S. Bank N.A.*, 140 S. Ct. 1615, 1621 (2020); *see also Muransky*, 979 F.3d at 924 (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009)).

## LACK OF SUBJECT MATTER JURISDICTION

Pres. Martinelli adopts the District Court's legal standard for a motion to dismiss under Fed. R. Civ. P. 12(b)(1) based on lack of subject jurisdiction:

> A Rule 12(b)(1) motion challenges the district court's subject matter jurisdiction and takes one of two forms: a "facial attack" or a "factual attack." "A 'facial attack' on the complaint 'require[s] the court merely to look and see if [the] plaintiff [*6] has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion.'" *McElmurray v. Consol. Gov't of Augusta-Richmond Cty.*, 501 F.3d 1244, 1251 (11th Cir. 2007) (quoting *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990)). "A 'factual attack,' on the other hand, challenges the existence of subject matter jurisdiction based on matters outside the pleadings." *Kuhlman v. United States*, 822 F. Supp. 2d 1255, 1256-57 (M.D. Fla. 2011) (citing *Lawrence*, 919 F.2d at 1529); see *Stalley* ex rel. U.S. v. Orlando Reg'l Healthcare Sys., Inc., 524 F.3d 1229, 1233 (11th Cir. 2008) ("By contrast, a factual attack on a complaint challenges the existence of subject matter jurisdiction using material extrinsic from the pleadings, such as affidavits or testimony.").
>
> In assessing the propriety of a motion for dismissal under Fed. R. Civ. P. 12(b)(1), a district court is not limited to an inquiry into undisputed facts; it may hear conflicting evidence and decide for itself the factual issues that determine jurisdiction." *Colonial Pipeline Co. v. Collins*, 921 F.2d 1237, 1243 (11th Cir. 1991). As such, "[w]hen a defendant properly challenges subject matter jurisdiction under Rule 12(b)(1) the district court is free to independently weigh facts, and 'may proceed as it never could under Rule 12(b)(6) or Fed. R. Civ. P. 56.'" *Turcios v. Delicias Hispanas Corp.*, 275 F. App'x 879, 880 (11th Cir. 2008) (quoting *Morrison v. Amway Corp.*, 323 F.3d 920, 925 (11th Cir. 2003)).
>
> *Berrocal v. Garland*, No. 22-cv-23511, 2023 U.S. Dist. LEXIS 32227, at *5-6 (S.D. Fla. Feb. 27, 2023); ECF No. [35], 4-5.

This appeal centers around the following key issues: traceability and redressability to establish standing under Article III, principles of international law, and Pres. Martinelli's standing under the Rule of Specialty pursuant to the Treaty.

The first argument addresses the interpretation of traceability under Article III's causation requirement. The Plaintiff's injuries, in this case, are directly connected to the Government Defendants' conduct, satisfying the traceability requirement. Contrary to the *Jacobson* case, *infra*, where the plaintiff suffered injury from actions by independent officials not before the court, Pres. Martinelli's harm directly stemmed from actions by a U.S. Department of State representative, Mr. Heinemann. *Jacobson v. Florida Sec'y of State*, 974 F.3d 1236 (11th Cir. 2020). His inaccurate guidance on the applicability of the Rule of Specialty contributed to Pres. Martinelli's wrongful prosecution in violation of the Rule of Specialty. Rather than acting independently, Panamanian officials proceeded only after Mr. Heinemann incorrectly asserted that the Rule of Specialty no longer applied in Pres. Martinelli's case. Thus, the harm is not the consequence of a third party's independent actions but is "fairly traceable" to Mr. Heinemann and the U.S. Department of State.

The second argument addresses the redressability element, pivoting on the principles of international law, specifically the doctrine of *pacta sunt servanda*, or "agreements must be kept." Applying this to Article III standing, it is not merely

speculative but highly probable that a favorable court decision would address Pres. Martinelli's injuries. Based on *Garcia-Bengochea v. Carnival Corp.*, even a partial remedy suffices for redressability. The doctrine of *pacta sunt servanda* creates an expectation for nations to honor their treaty obligations, including court decisions regarding those treaties.

The third argument asserts that Pres. Martinelli has standing under the Rule of Specialty. In accordance with the Rule of Specialty the requesting state, which secures the extradition of a person, can prosecute that person only for the offense for which he or she was surrendered by the requested state. The Treaty, particularly Articles VI, VII, and VIII, offers protections to individuals subject to extradition requests, effectively granting individual rights. The Rule of Specialty is viewed as a shared right between the extraditing nation and the extradited defendant. In Pres. Martinelli's case, the United States, by not following proper procedures, failed to exercise its right to object to a treaty violation.

The harm suffered by Pres. Martinelli is directly traceable to the actions of Mr. Heinemann and the State Department, satisfying the causation requirement of Article III. It is also highly likely that a favorable decision for Pres. Martinelli would partially address his harm, thus meeting the redressability requirement. The Rule of Specialty further provides Pres. Martinelli standing in this case, solidifying the argument that the Treaty violations should be recognized and remedied.

## ARGUMENT

## I. President Martinelli has Article III Standing.

Pres. Martinelli has adequately alleged all of the elements required to establish Article III standing. The District Court erroneously concluded that Pres. Martinelli did not meet the requirements for Article III standing due to the failure to meet the traceability and redressability elements. However, Pres. Martinelli's injuries are "fairly traceable" to the Government Defendants, and there is a significant likelihood that declaratory judgments from the Court will redress his injuries.

### A. FAIRLY TRACEABLE.

"[P]roximate causation is not a requirement of Article III standing, which requires only that the plaintiff's injury be fairly traceable to the defendant's conduct." *Havana Docks Corp. v. MSC Cruises SA Co.*, 484 F. Supp. 3d 1177, 1193–94 (S.D. Fla. 2020) (quoting *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 134 n.6 (2014)). To meet the causation requirement of Article III, plaintiffs must demonstrate that their injuries are "connect[ed] with the conduct of which [they] complain." *Trump v. Hawaii*, 138 S. Ct. 2392, 2416 (2018). *See also Duke Power Co. v. Envtl. Study Grp.*, 438 U.S. 59, 75 n.20 (1978) (explaining that Article III standing "require[s] no more than a showing that there is a substantial likelihood" of causation). Consequently, it is not necessary for a plaintiff to prove

that the defendant's actions were the final link in the chain of causation. *Bennett v. Spear*, 520 U.S. 154, 168-69 (1997).

In this case, the District Court partially relies on *Jacobson v. Florida Sec'y of State*, 974 F.3d 1236, 1253 (11th Cir. 2020) (quoting *Lujan*, 504 U.S. at 560). In *Jacobson*, it is stated that the standing causation requirement will not be fulfilled if a plaintiff's injury results from the independent action of a third party not present before the court. *Id*.

However, the *Jacobson* case is readily distinguishable from the current case. In *Jacobson*, the plaintiffs filed a lawsuit against Florida's Secretary of State for arranging election ballots in favor of Republican candidates ahead of Democratic ones but failed to sue the election supervisors responsible for organizing and printing the disputed ballots. These supervisors were independent officials beyond the Secretary's control. The *Jacobson* court held that "because the [Secretary] didn't do (or fail to do) anything that contributed to [plaintiffs'] harm," the voters and organizations "cannot meet Article III's traceability requirement." *Id*. citing *Lewis v. Governor of Ala.*, 944 F.3d 1287, 1301 (11th Cir. 2019) (en banc).

In the present case, Ms. Porcell, the former Attorney General of the Republic of Panama, made an unofficial inquiry to Mr. Heinemann and the U.S. Department of State about the continuing applicability of the Rule of Specialty in Pres.

Martinelli's criminal case No. 138-15 on October 17, 2019.[2] According to Panamanian law, Ms. Porcell, as the Attorney General, did not possess the authority to raise this question with Mr. Heinemann and the U.S. Department of State. See ECF No. [33-14]. Despite not receiving an official inquiry from the Foreign Minister of Foreign Affairs of the Republic of Panama and lacking sufficient authority, Mr. Heinemann responded to Ms. Porcell's question by stating that the Rule of Specialty no longer applied in the case via a letter dated December 12, 2019. *See* ECF No. [1-21] at 3. Contrary to the Secretary of State in *Jacobson*, who did not contribute to the plaintiffs' harm, Mr. Heinemann, representing the U.S. Department of State, responded, giving Panama the go-ahead to prosecute President Martinelli, which it then proceeded to do.

Mr. Heinemann and Ms. Porcell did not adhere to the established procedures agreed upon by both countries in April 2019, which required submitting a waiver to lift the Rule of Specialty protections to the respected country before further prosecuting an individual. ECF No. [1-20] and ECF No. [33-5]. Additionally, the Republic of Panama never formally requested a waiver of the Rule of Specialty protections under Article VIII of the Treaty.

---

[2] As per the Criminal Procedure Code of the Republic of Panama (specifically, Articles 29, 30, and 545), only jurisdictional entities such as a court of law are authorized to make a formal inquiry to the United States about the Rule of Specialty's continuing applicability in the case of President Martinelli. The Ministry of Foreign Affairs handles the corresponding request at the formal request of a judge.

On July 2, 2020, the First Prosecutor's Office Specialized Against Organized Crime relied on Mr. Heinemann's letter to criminally charge Pres. Martinelli with the Crime Against the Economic Order-Money Laundering-Concealment. Also, the Special Anticorruption Prosecutor's Office of the Attorney General's Office of Panama relied on the letter to criminally charge Pres. Martinelli with the Crime Against the Economic Order-Money Laundering on August 4, 2020.

Mr. Heinemann's actions are easily traceable to the harm inflicted upon Pres. Martinelli. When Panamanian officials queried the U.S. Department of State about the applicability of the Rule of Specialty, Mr. Heinemann responded with a letter erroneously stating that the Rule of Specialty was no longer applicable to Pres. Martinelli's case. This, in turn, led to the prosecution of Pres. Martinelli by Panamanian officials for additional offenses during the pendency of the criminal case that was the object of his extradition in June 2018.

Unlike in *Jacobson*, Mr. Heinemann's response is "fairly traceable to the challenged action of the defendant[s], and not the result of the *independent action* of some third party not before the court." *Lujan*, 504 U.S. at 560. In this case, Panamanian officials did not act independently; they acted only after receiving Mr. Heinemann's response. As observed in *Havana*, 484 F. Supp. 3d at 1194 (citing *Focus on the Family v. Pinellas Suncoast Transit Auth*., 344 F.3d 1263, 1273 (11th Cir. 2003) "even harms that flow indirectly from the action in question can be said

to be 'fairly traceable' to that action for standing purposes." As such, Pres. Martinelli has correctly named Mr. Heinemann and the U.S. Department of State as defendants whose actions are fairly traceable to his harm, distinguishing this case from *Jacobson* and satisfying the standing causation requirement.

## B.    REDRESSABILITY.

In assessing the redressability component of the standing doctrine, the court asks whether a decision in a plaintiff's favor would significantly increase the likelihood of obtaining relief that directly redresses the injury claimed. *Lewis v. Governor Of Ala.*, 944 F.3d 1287, 1292 (11th Cir. 2019). The court's judgment must redress the plaintiff's injury, whether directly or indirectly, with its effect on the defendant—not an absent third party. *Id*. To satisfy the redressability requirement, a plaintiff must show that it is 'likely,' rather than merely 'speculative,' that the injury will be 'redressed by a favorable decision.' *Lujan*, 504 U.S. at 561 (quoting *Simon v. Eastern Ky. Welfare Rts. Org*., 426 U.S. 26, 38, 43 (1976)). At the dismissal stage, a plaintiff must plausibly allege that a decision in their favor would "significantly increase. . .the likelihood" of obtaining relief that directly redresses the injury suffered. *Garcia-Bengochea v. Carnival Corp*., 57 F.4th 916, 927 (11th Cir. 2023) citing *Harrell v. Fla. Bar*, 608 F.3d 1241, 1260 n.7 (11th Cir. 2010).

Significantly, for standing purposes, the relief sought need not be complete. As stated in *Uzuegbunam v. Preczewski*, 141 S. Ct. 792, 801 (2021), when

addressing whether an award of nominal damages satisfies redressability, "True, a single dollar often cannot provide full redress, but the ability 'to effectuate a partial remedy' satisfies the redressability requirement." This was echoed in *Made in the U.S.A. Foundation v. United States*, 242 F.3d 1300, 1310 (11th Cir. 2001), which agreed that a "partial remedy would be sufficient for redressability" (internal quotation marks and citation omitted). *Garcia-Bengochea v. Carnival Corp.*, 57 F.4th 916, 927 (11th Cir. 2023).

> ### i. There is a significant likelihood that Plaintiff's injuries will be redressed if Plaintiff receives a favorable ruling from the Court

Assessing redressability under Article III standing involves demonstrating that it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan*, 504 U.S. at 557. If a plaintiff is challenging the violation of an extradition treaty, they would need to demonstrate that a favorable ruling would likely remedy their claimed injury.

"The United States Constitution declares a treaty to be the law of the land. It is, consequently, to be regarded in courts of justice as equivalent to an act of the legislature, whenever it operates of itself without the aid of any legislative provision." *United States v. Rauscher*, 119 U.S. 407, 408 (1886). Similarly, Article 159 of Panama's Constitution of 1972 with its Amendments states that a legislative function of National Assembly is "to approve or disapprove, before ratification, treaties and international agreements negotiated by the Executive Branch."

In this context, the Treaty signed in 1904 and ratified in 1905 by both the United States and Panama obliges federal employees and agencies to adhere to its terms. This includes the Rule of Specialty specified in Article VIII of the Treaty, which protects individuals from prosecution for offenses committed prior to extradition.

If a declaratory judgment is entered in favor of Pres. Martinelli, it is likely, not just merely speculative, that his injuries will be redressed. Such a judgment would deem unlawful the agency actions by Mr. Heinemann and the U.S. Department of State, reinstating the protections afforded to Pres. Martinelli by the Rule of Specialty. This would significantly increase the likelihood that he would not face further prosecution for alleged offenses occurring before his 2018 extradition.

As a result, if the Government Defendants are subject to a declaratory judgment, it will significantly increase the chances that Pres. Martinelli will not face prosecution for money laundering, as the alleged offenses occurred prior to his extradition from the United States in 2018, which is precluded under the Rule of Specialty depicted in  Article VIII of the Treaty.

Moreover, if a declaratory judgment invalidates the agency actions of Mr. Heinemann and the U.S. Department of State, it will enable President Martinelli to invoke the application of Article 548 of the Procedural Penal Code of the Republic of Panama. This article restricts the prosecution of extradited individuals for crimes

committed before their surrender unless consent is given by the foreign state. A favorable judgment would mandate the dismissal of the two criminal proceedings against Pres. Martinelli, since no foreign state has given such consent.

The District Court's opinion suggesting that the likelihood of redress is low due to the discretionary nature of Article 548 is flawed. *See* ECF No.[35] at 9 and ECF No.[33-14]. A favorable judgment would invalidate Mr. Heinemann's erroneous legal opinion that the United States adopted and would restore the protections of the Rule of Specialty specified in Article VIII of the Treaty to Pres. Martinelli by operation of law, thereby eliminating any violation.

Furthermore, the District Court significantly understated the importance of the doctrine of *pacta sunt servanda* and the likelihood that the Republic of Panama would adhere to the requirements of the Treaty and the Rule of Specialty. *See* ECF No.[35] at 9. The doctrine of *pacta sunt servanda* supports Pres. Martinelli's argument, indicating that treaties must be honored in good faith unless terminated or suspended. This principle applies to both the United States and Panama, implying a general obligation to respect treaty commitments, including court rulings regarding those treaties.

> . . .[*P*]*acta sunt servanda*, which provides that a treaty in force is "binding upon the parties to it and must be performed by them in good faith" unless the treaty has been affirmatively terminated or suspended. Vienna Convention art. 26; see 1 RESTATEMENT (THIRD) OF FOREIGN RELATIONS LAW OF THE UNITED STATES § 321 & cmt. a, at 190 (stating

that the doctrine of *pacta sunt servanda*, though subject to international law rules concerning the validity and termination of agreements, "lies at the core of the law of international agreements and is perhaps the most important principle of international law")

*Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 433 (2d Cir. 2001)

The doctrine of *pacta sunt servanda* is a foundational principle in international law that means "agreements must be kept." It is the basis for enforcing treaties between nations, including extradition treaties. Essentially, it implies that nations will follow through with their obligations under an international agreement unless there is a valid reason under the law of treaties for them not to do so.

Applying the doctrine of *pacta sunt servanda* to this case, if a violation of the extradition treaty has occurred, and the District Court enters a judgment in favor of the Plaintiff, it is almost certain that Panama would adhere to the ruling of the Court. This is because the doctrine of *pacta sunt servanda* implies a general obligation for nations to abide by their treaty commitments, which would include respecting the decisions of the courts regarding those treaties.

This principle is further cemented by the District Court's personal jurisdiction over the Government Defendants. In this case, the District Court has the power to issue a declaratory judgment against the Government Defendants, rendering Mr. Heinemann's 2019 and 2020 letters invalid and reinstating by operation of law the Rule of Specialty protections for Pres. Martinelli. A retraction of the letters would

oblige the U.S. Department to notify the Panamanian authorities of their invalidity. This process would, directly and indirectly, redress Pres. Martinelli's injuries.

In conclusion, a favorable declaratory judgment for Pres. Martinelli would likely redress his alleged injury. The legal opinions that resulted in the Treaty and Rule of Specialty violations would be invalidated, and the protections granted by Article VIII of the Treaty would be restored to Pres. Martinelli. This would likely result in the dismissal of the two criminal proceedings against him. The doctrine of *pacta sunt servanda* supports this likelihood of redressability.

### ii. *It is the effect on the defendants...not an absent third party-that redresses the Plaintiff's injury, whether directly or indirectly...*

The Court's power to hear a case and issue a binding judgment against the Government Defendants is known as personal jurisdiction. In this particular case, the District Court has personal jurisdiction over the Government Defendants, which gives it the authority and control to provide a meaningful remedy to the Plaintiff. Pres. Martinelli is seeking a declaratory judgment to declare unlawful and set aside the actions of Mr. Heinemann and the U.S. Department of State. Such a judgment would render invalid Mr. Heinemann's letters which stated that the Rule of Specialty no longer applied in Pres. Martinelli's case. The issuance of a favorable judgment would reinstate the Rule of Specialty protections to Pres. Martinelli, as outlined in Article VIII of the Treaty through operation of law. Moreover, the retraction of Mr. Heinemann's letters would require the U.S. Department to notify the addressees of

the letters or the Panamanian authorities that the contents of the letters are no longer valid and cannot be relied upon. Therefore, a favorable judgment against the Government Defendants here would directly and indirectly redress Pres. Martinelli's injuries.

Because Pres. Martinelli's injury is fairly traceable to the Defendants in this action, and he has demonstrated that the relief he seeks is likely to redress his injury, the Court should find that he has Article III standing.

## II.    President Martinelli has standing under the Rule of Specialty

In *United States v. Rauscher*, the U.S. Supreme Court stated that "a treaty is a law of the land, as an act of Congress is, whenever its provisions prescribe a rule by which the rights of the private citizen or subject may be determined." 119 U.S. 407, 408 (1886). "And when such rights are of a nature to be enforced in a court of justice, the court resorts to the treaty for a rule of decision for the case before it as it would to a statute." *Id.*

The U.S. Supreme Court in *Rauscher* determined that the doctrine of specialty applies to all extradition treaties that the United States is a signatory, irrespective of whether the treaty explicitly refers to the doctrine.[3] *Id.* at 422-24, 430. The U.S. Supreme Court asserted that it was "impossible to conceive" of an exercise of

---

[3] Mary-Rose Papandre, *Standing to Allege Violations of the Doctrine of Specialty: An Examination of the Relationship between the Individual and the Sovereign,* The University of Chicago Law Review, 62:1187, Page 1187, 1995

jurisdiction which could ignore the principle of specialty and not implicate a "*fraud upon the rights of the party extradited and of bad faith to the country which permitted his extradition.*" *Id.* at 422 (cited in *United States v. Puentes*, 50 F.3d 1567, 1573 (11th Cir. 1995)).

## A.   STANDING UNDER THE TREATY

In this case, the District Court explained the requirements for standing under the Treaty:

> Notwithstanding the Article III standing requirements of injury-in-fact, traceability, and redressability, the Eleventh Circuit in *Puentes* held that "an individual extradited pursuant to an extradition treaty has standing under the doctrine of specialty to raise any objections which the requested nation *might have asserted.*" *Id.* at 1575 (emphasis modified); see *also United States v. Alvarez-Machain*, 504 U.S. 655, 667 (1992) (rejecting a requirement that a foreign government must formally object to a treaty violation in order for an individual to have standing to bring a claim for that violation). However, this right exists only "at the sufferance of the requested nation." *Puentes*, 50 F.3d at 1575. "As a sovereign, the requested nation may waive its right to object to a treaty violation and thereby deny . . . standing to object to such an action." *Id.; United States v. Duarte*, 15-20540-CR, 2018 U.S. Dist. LEXIS 1257, 2018 WL 310025, at *2 (S.D. Fla. Jan. 4, 2018), *aff'd sub nom. United States v. Mejia-Duarte*, 780 F. App'x 730 (11th Cir. 2019).
>
> *Berrocal v. Garland*, No. 22-cv-23511, 2023 U.S. Dist. LEXIS 32227, at *14 (S.D. Fla. Feb. 27, 2023); ECF No. [35] at 10.

## B.   THE DOCTRINE OF SPECIALTY

In *United States v. Puentes*, 50 F.3d 1567 (11th Cir. 1995), the Eleventh Circuit Court of Appeals thoroughly explained the Rule of Specialty. In sum, "the doctrine of specialty provides the surrendering nation with a means of ensuring

compliance with the extradition treaty, and reflects a fundamental concern of governments that persons who are surrendered should not be subject to indiscriminate prosecution by the receiving government." *Id.* at 1569. The Rule of Specialty "is an implicit limitation on the requesting nation's ability to prosecute the defendant." *Id.* An extradited individual has "standing to allege a violation of the principle of specialty, but the defendant's challenges are limited under the principle of specialty to only those objections that the rendering country *might* have brought." *Id.* (emphasis added). Therefore, a defendant is permitted to raise any objections that the country from which he was extradited *could* raise. *Id.* at 1575. However, the extraditing country could preclude such a challenge by a defendant by waiving its right to object to a violation. *United States v. Duarte*, No. 15-20540-CR, 2018 U.S. Dist. LEXIS 1257, at *6-9 (S.D. Fla. Jan. 4, 2018) citing *Puentes*, 50 F.3d at 1575.

In the *Puentes* case, the plaintiff, a citizen of Uruguay extradited to the United States for drug trafficking offenses, challenged his prosecution for additional offenses included in a superseding indictment after his extradition. *Puentes*, 50 F.3d 1567. A notable distinction between the *Puentes* case and the present one is that in *Puentes*, the court examined both the treaty and the indictments, leading to the conclusion that there was no violation of the Rule of Specialty.

### i.    Issues with the District Court's Analysis

However, in this case, the District Court placed a greater emphasis on identifying whether the United States *would* object to the potential violation rather than applying the correct standard—if the United States *could, or might*, object. Certainly, the United States has the right to waive the Rule of Specialty by following the proper procedures for doing so. That did not happen here. Mr. Heinemann erroneously stated in his letter to Ms. Porcell that the Rule of Specialty no longer applied and that a waiver was unnecessary. ECF No. [1-21] at 3. This arbitrary decision by Mr. Heinemann failed to comply with the U.S. Department of State's procedures regarding waivers. ECF No. [1-20].

### ii.    Role and Responsibility of the U.S. Department of State

Following the extradition of a fugitive to the requesting state, submission of "a waiver of the Rule of Specialty is the process by which the requested state formally grants permission to prosecute or punish the fugitive for crimes other than those for which they were extradited."[4] 7 FAM 1612. Mr. Heinemann concluded that the Rule of Specialty did not apply in Pres. Martinelli's case because 1) a Panamanian court acquitted him on August 9, 2019, and 2) because Pres. Martinelli

---

[4]  In practice, a waiver request is essentially the same as a request for extradition, with the requesting state submitting certified and translated documents to support the request. As a general rule, the request to waive the Rule of Specialty must contain details clarifying why the new charges were not included in the initial extradition request. 7 FAM 1626.2-  Waiver of the Rule of Specialty

had been free to travel outside Panama since September 15, 2019. *Id.* Mr. Heinemann's legal analysis was erroneous as Article VIII of the Treaty explicitly states that the Rule of Specialty remains valid until the extradited individual has had an opportunity to return to the country from which he was surrendered. On December 12, 2019, the criminal case for which Pres. Martinelli was extradited was still pending, and the U.S. authorities had the ability to reinstate the extradition order of 2018 if he were to enter the United States. Furthermore, the U.S. Department of State's revocation of Pres. Martinelli's visa shortly after his extradition to the Republic of Panama made it impossible for him to travel to the United States. *See* ECF No. [1] ¶ 40 and ECF No. [33-6].

Interestingly, Mr. Heinemann, who wrote a letter to the Ministry of Foreign Affairs of the Republic of Panama on April 4, 2019, outlining the proper procedures for requesting a waiver of the Rule of Specialty before any additional prosecution of an extradited individual, failed to adhere to the same protocols that he outlined. These protocols are established by the U.S. Department of State for consideration of Rule of Specialty waiver requests. *See* ECF No. [1-20]. It is unlikely that courts would endorse a country bypassing its established procedures to waive treaty violations. Under the circumstances present in this case, the United States never granted a waiver to the Republic of Panama to lift the protections provided by Article VIII of the Treaty. And if the U.S. Department of State and Mr. Heinemann had

followed the procedures, they would have realized that the Rule of Specialty still applied and a waiver was required.

### C. THE DISTRICT COURT NEGLECTED TO INITIALLY EXAMINE THE PLAIN LANGUAGE OF THE TREATY TO DETERMINE WHETHER IT GRANTS AN INDIVIDUAL RIGHT TO PRESIDENT MARTINELLI.

To establish standing under the Rule of Specialty, the Court must look first to the Treaty itself to determine if Pres. Martinelli has an individual right to challenge a treaty violation. *Leiva v. Warden*, 928 F.3d 1281, 1289 (11th Cir. 2019) *citing United States v. Alvarez-Machain*, 504 U.S. 655, 663 (1992) ("In construing a treaty, as in construing a statute, we first look to its terms to determine its meaning."). Essentially, the standing question is whether the extradition treaty, similar to the "constitution or a statutory provision on which the claim rests properly can be understood as granting persons in the plaintiff's position a right to judicial relief." *Warth v. Seldin*, 422 U.S. 490, 500 (1975). Irrespective of the actions or statements made by the surrendering sovereign, the terms of a treaty cannot be waived.

#### i. *The Treaty*

When interpreting a treaty, courts first look at the text of the treaty and the context in which the written words are used. *Eastern Airlines, Inc. v. Floyd*, 499 U.S. 530, 534 (1991). If the language of the treaty is clear and unambiguous, [the court] will apply the words of the treaty as written. *United States v. Duarte-Acero*, 208 F.3d 1282, 1285 (11th Cir. 2000); *Garcia-Godos v. Warden*, 853 F. App'x 404, 408 (11th

Cir. 2021). "[A] treaty may [] contain provisions which confer certain rights upon the citizens or subjects of one of the nations residing in the territorial limits of the other, which partake of the nature of municipal law, and which are capable of enforcement as between private parties in the courts of the country." *Edye v. Robertson*, 112 U.S. 580, 598 (1884). In instances where a treaty lends itself to dual interpretations, one narrowing the range of rights it confers, and the other broadening them, preference should be given to the interpretation that amplifies these rights. *United States v. Belfast*, 611 F.3d 783, 806-07 (11th Cir. 2010) (citing *Factor v. Laubenheimer*, 290 U.S. 276, 293-94 (1933)).

The Treaty between the United States and Panama for the mutual extradition of criminals contains the following articles:

> **ARTICLE VI.** A fugitive criminal shall not be surrendered if the offense in respect of which his surrender is demanded be of a political character, or if he proves that the requisition for his surrender has, in fact, been made with a view to try or punish him for an offense of a political character. *No person* surrendered by either of the high contracting parties to the other shall be triable or tried, or by punished, for any political crime or offense, or for any act connected therewith, committed previously to his extradition. *If any question shall arise as to whether a case comes within the provisions of this article, the decision of the authorities of the government on which the demand for surrender is made, or which may have granted the extradition, shall be final.*

> **ARTICLE VII.** Extradition shall not be granted, in pursuance of the provisions of the Treaty if legal proceedings or the enforcement of the penalty for the act committed *by the person claimed has become barred*

*by limitation*, according to the laws of the country to which the requisition is addressed.

**ARTICLE VIII.** *No person* surrendered by either of the high contracting parties to the other shall, without *his* consent, freely granted and publicly declared *by him*, be triable or tried or be punished for any crime or offense committed prior to *his* extradition, other than that for which *he* was delivered up, until *he* shall have had an opportunity of returning to the country from which *he* was surrendered.

(emphasis added).

### ii.  *Interpretation of the Treaty*

Looking closely at the language used in Articles VI, VII, and VIII of the Treaty, it can be concluded that they do indeed provide certain protections to the individual subject to an extradition request. These protections effectively confer individual rights to that person.

Article VI states that individuals have the right to contest extradition if the offense is political. They are also protected from punishment for any political crime committed before extradition. These protections safeguard individual rights. However, "If any question shall arise as to whether a case comes within the provisions of [art. VI], the decision of the authorities of the government on which the demand for surrender is made, or which may have granted the extradition, shall be final." This final statement is notable because it explicitly states the sovereign's decision on the controversy "shall be final," thus, it clearly states that an individual

would have no standing without the protest of the surrendering country. Article VIII, the Rule of Specialty, has no such provision limiting an individual's rights.

Article VII states that in cases where the statute of limitations has expired, a person cannot be extradited from a country that has laws stating a time limit for prosecution. Finally, Article VIII states that individuals cannot be punished for any crime committed before their extradition, except for the one they were extradited for, unless they consent. They also have the right to return to the country from which they were surrendered before being punished for any other crime. These three articles of the Treaty in particular bestow upon an individual the right to contest extradition based on the nature of the offense, to invoke the statute of limitations, and to consent to or refuse trial or punishment for crimes committed prior to extradition.

### D. RELEVANT CASE LAW

In *Collins v. O'Neil*, 214 U.S. 113, 120 (1909), the U.S. Supreme Court "held that under U.S. Rev. Stat. § 5725 and art. 3 of the treaty of July 12, 1889, 26 Stat. 1508-9, petitioner could not be tried for any other offense that existed when he was extradited but that he was not protected against trial for any offenses he committed subsequent to his extradition." Compared to the current case, Mr. Heinemann wrote the letter on December 12, 2019, allowing the Republic of Panama to pursue charges

against President Martinelli for alleged offenses before his extradition, spanning from 2010 to 2014.

In *Cosgrove v. Winney*, 174 U.S. 64 (1899), Cosgrove, a Canadian citizen, was extradited to the United States under a treaty with Great Britain.[5] After his extradition, he returned to Canada to await trial but was rearrested in the U.S. for previous alleged crimes. The United States argued that Cosgrove's return to Canada nullified the Rule of Specialty. However, the Supreme Court refuted this, holding that Cosgrove retained the right to resolve his initial extradition offenses before facing new charges. This ruling applied even though Cosgrove had returned to Canada, signifying that the Rule of Specialty persisted until the original extradition case was final. Similarly, Pres. Martinelli faced new charges while his original case was under appeal and retrial. Notably, unlike Cosgrove, Martinelli could not return to the United States as his visa was revoked by the U.S. Department of State.

### E.    THE STATUTE OF LIMITATIONS UNDER THE TREATY

Under the extradition treaty between the United States and Japan, prosecution is barred for extradition requests where the offense's statute of limitations has

---

[5] The United States–Great Britain Treaty of July 12, 1889, has strikingly similar language to the U.S. – Panama Treaty regarding the Rule of Specialty. The United States–Great Britain Treaty, art. III states: "No person surrendered by or to either of the high contracting parties shall be triable or be tried for any crime or offense, committed prior to his extradition, other than the offense for which he was surrendered, until he shall have had an opportunity of returning to the country from which he was surrendered."

expired under U.S. law. *In re Nunez*, No. 10-24020-MC, 2011 U.S. Dist. LEXIS 7321, at *1 (S.D. Fla. Jan. 26, 2011). Similar to *In re Nunez*, the US-Panama Treaty considers statutes of limitations for waivers of the Rule of Specialty. According to Article VII of the Treaty, the statute of limitations governs whether a waiver or extradition is permissible. In the U.S., there is a five-year statute of limitations for money laundering offenses under 18 U.S.C. § 1956 and 18 U.S.C. § 1957, as per 18 U.S.C. § 3282.

The Republic of Panama is prosecuting Pres. Martinelli for alleged money laundering committed during his 2010-2014 presidency. His term ended on July 1, 2014, and by December 12, 2019—more than five years later—Panama had not formally requested a Rule of Specialty waiver from the U.S. Therefore, under Article VII of the Treaty and 18 U.S.C. § 3282, the U.S. Department of State could not issue a waiver after July 1, 2019, for Panama to prosecute Pres. Martinelli for money laundering. [6]

Mr. Heinemann's letters circumvented the limitations outlined in Article VII of the Treaty, 18 U.S.C. § 3282, and the Foreign Affairs Manual ("FAM")., making them a violation of the Treaty and a direct cause of harm to Pres. Martinelli's rights. Pres. Martinelli was indicted on July 2, 2020, and August 4, 2020, for alleged money laundering.

---

[6] It is worth highlighting that Pres. Martinelli has been physically present in the Republic of Panama since June 11, 2018, actively engaging in his legal proceedings and is not considered a fugitive.

### i. *Individual Rights Under Treatises*

In the *Rauscher* case, the U.S. Supreme Court consistently characterized the doctrine of specialty as a right shared by both the nation extraditing the individual and the extradited defendant. Even though the defendant's specialty rights may stem from those of the state granting asylum, the language used in the *Rauscher* ruling suggests that the defendant is not merely a third-party beneficiary of the treaty. Rather, the individual's rights are central to the doctrine of specialty. Consequently, focusing exclusively on the rights of the asylum-granting state misconstrues the doctrine's essential nature.

The U.S. Supreme Court ruling in *United States v. Alvarez-Machain* (1992) made it clear that an individual can assert their rights under the Rule of Specialty without the requirement of objection from the surrendering country.

> The Extradition Treaty has the force of law, and if, [] it is self-executing, it would appear that a court must enforce it on behalf of an individual regardless of the offensiveness of the practice of one nation to the other nation. In *Rauscher*, the Court noted that Great Britain had taken the position in other cases that the Webster-Ashburton Treaty included the doctrine of specialty, but no importance was attached to whether or not Great Britain had protested the prosecution of Rauscher for the crime of cruel and unusual punishment as opposed to murder."

*United States v. Alvarez-Machain*, 504 U.S. 655, 667 (1992)

Existing case law establishes that extradited individuals have a derivative right (standing) to contest the application of the Rule of Specialty when the surrendering nation *might* have lodged a complaint. The criterion is not whether the

surrendering country has filed a complaint or intends to, but if it potentially could. The U.S. has the capability to object to the Rule of Specialty—however, the matter of whether it will or has already objected is inconsequential.

In this particular instance, Pres. Martinelli is seeking a declaratory judgment under the Administrative Procedures Act and the Declaratory Judgment Act. Pres. Martinelli is requesting the Court to scrutinize the process through which Mr. Heinemann and the U.S. Department of State issued a legal opinion regarding the inapplicability of the Rule of Specialty in his case, despite the absence of a formal diplomatic request from the Republic of Panama and a failure to adhere to the procedures outlined in the Foreign Affairs Manual. The actions of Mr. Heinemann and the U.S. Department of State permitted Panamanian authorities to continue with further prosecution of Pres. Martinelli, in violation of his rights and the Treaty.

The issue in this case is not whether the United States would object but whether the U.S. Department of State and Mr. Heinemann followed the appropriate procedures when submitting letters to Panamanian officials stating that the Rule of Specialty no longer applied.

**F.    MR. HEINEMANN FAILED TO FOLLOW THE STATE DEPARTMENT'S OWN PROCEDURES WHEN HE SUBMITTED AN UNOFFICIAL RESPONSE STATING THAT THE RULE OF SPECIALTY NO LONGER APPLIED.**

In *Diwan*, the plaintiff sued the United States for prosecuting her for an offense (conspiracy) other than those for which she was extradited, in violation of

the Rule of Specialty contained in the extradition treaty between the U.S. and Great Britain. The *Diwan* court found that she did not have standing because "[the] extradited individual [] can raise only those objections to the extradition process that the surrendering country might consider a breach of the extradition treaty." *United States v. Diwan*, 864 F.2d 715, 721 (11th Cir. 1989).

In *Diwan*, the court analyzed correspondence between the United States and Great Britain and confirmed that the proper procedures were followed. The UK's Home Secretary, "who according to English constitutional and statutory law is to determine ultimately whether or not the accused is to be sent abroad for trial. . . confirmed that the surrender warrant, which was drafted at his direction, authorized the prosecution of Diwan on all counts, including the conspiracy count." *United States v. Diwan*, 864 F.2d 715, 721 (11th Cir. 1989) (internal citations omitted). This case is distinguishable from *Diwan*.

Proper procedures were not adhered to in Pres. Martinelli's case. Mr. Heineman's correspondence with Mr. Porcell on December 12, 2019, bypassed the correct channels, lacked supportive documentation, and incorrectly determined that the Rule of Specialty "no longer applied." Consequently, Mr. Heineman's letter permitted Ms. Porcell to prosecute Pres. Martinelli for additional offenses not subject to his extradition.

In an attempt to correct past procedural errors, Mr. Heineman, representing the U.S. Department of State, responded to the Anti-Corruption Prosecutor's Office

of the Public Ministry of the Republic of Panama's verbal inquiry regarding the Rule of Specialty's continued applicability to Pres. Martinelli's case. His letter, dated October 29, 2020, was addressed to the then Minister of Foreign Affairs, Mr. Alejandro Ferrer.

On December 2, 2020, the U.S. Embassy forwarded Mr. Heineman's letter, indicating that he represented the U.S. Government. However, neither Mr. Heineman's October 29, 2020, letter nor the U.S. Embassy's Diplomatic Note 490 could rectify the violation of Pres. Martinelli's rights or the breach of Article VIII of the Treaty. This is because Pres. Martinelli's prosecution commenced on July 2, 2020, and August 4, 2020, based on Mr. Heineman's letter from December 12, 2019. In other words, Mr. Heineman's later letter, subsequently endorsed by the U.S. Embassy, was futile as Article VIII's protections had already been breached.

## CONCLUSION

The District Court's dismissal of Pres. Martinelli's case does not stand under close scrutiny. The injuries he suffered are directly linked to the actions of the U.S. Department of State, fulfilling the traceability requirement of Article III standing. Furthermore, a favorable decision for Pres. Martinelli would not only be probable but would also address, at least partially, the harm he has experienced, meeting the redressability requirement. Finally, the Rule of Specialty affirms Pres. Martinelli's standing, emphasizing the importance of recognizing and rectifying the Treaty violations. Therefore, we respectfully request that this Honorable Court overturn the District Court's decision and remand this case for further proceedings.

Date: May 15, 2023

/s/ CHARLIE E. CARRILLO
CHARLIE E. CARRILLO, ESQ.
Carrillo & Carrillo, LLC.
259 W. Patrick Street, Frederick, MD 21701
P: (301) 378-8595 | F: (240) 680-2762
M: (202) 808-4074 | E: cc@carrillobrux.com

/s/ TODD YODER
TODD YODER, ESQ.
Markus/Moss PLLC
40 NW 3rd St., PH 1, Miami, FL 33128
Email: tyoder@markuslaw.com
Phone: (305) 379-6667

*Counsel for Plaintiff-Appellant*
*Pres. Martinelli*

<u>**CERTIFICATE OF COMPLIANCE**</u>

1.  This brief complies with the type-volume limitation of Fed. R. App. P.

    32(a)(7)(B)(i) because:

    > this brief contains <u>8,491</u> words, excluding those parts of the brief
    > exempted by Fed. R. App. P. 32(f).

2.  This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5)

    and the type style requirements of Fed. R. App. P. 32(a)(6) because:

    > this brief has been prepared in a proportionally spaced typeface using
    > <u>Microsoft Office Word</u> in <u>Times New Roman</u>, <u>14-point</u>.

Date: May 15, 2023

/s/ CHARLIE E. CARRILLO
CHARLIE E. CARRILLO, ESQ.
Carrillo & Carrillo, LLC.
259 W. Patrick Street,  Frederick, MD 21701
P: (301) 378-8595 | F: (240) 680-2762
M: (202) 808-4074 | E: cc@carrillobrux.com

/s/ TODD YODER
TODD YODER, ESQ.
Markus/Moss PLLC
40 NW 3rd St., PH 1, Miami, FL 33128
Email: tyoder@markuslaw.com
Phone: (305) 379-6667

*Counsel for Plaintiff-Appellant*
  *Pres. Martinelli*

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on May 15, 2023, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eleventh Circuit by using the appellate CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished using the appellate CM/ECF system.

Date: May 15, 2023

/s/ CHARLIE E. CARRILLO
CHARLIE E. CARRILLO, ESQ.
Carrillo & Carrillo, LLC.
259 W. Patrick Street, Frederick, MD 21701
P: (301) 378-8595 | F: (240) 680-2762
M: (202) 808-4074 | E: cc@carrillobrux.com

/s/ TODD YODER
TODD YODER, ESQ.
Markus/Moss PLLC
40 NW 3rd St., PH 1, Miami, FL 33128
Email: tyoder@markuslaw.com
Phone: (305) 379-6667

*Counsel for Plaintiff-Appellant*
  *Pres. Martinelli*