# IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

RICARDO ALBERTO MARTINELLI BERROCAL,

Plaintiff-Appellant,

v.

ATTORNEY GENERAL OF THE UNITED STATES, U.S. SECRETARY OF STATE, THOMAS B HEINEMANN, Office of the Legal Adviser for Law Enforcement and Intelligence, United States Department of State,

Defendants-Appellees.

On Appeal from the United States District Court
for the Southern District of Florida

## BRIEF FOR APPELLEES

BRIAN M. BOYNTON
  *Principal Deputy Assistant Attorney General*

SHARON SWINGLE
LEWIS S. YELIN
BEN LEWIS
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7250*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 514-2494*

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Eleventh Circuit Rule 26.1-1, counsel for defendant-appellees certifies that, to the best of his knowledge, the following constitutes a complete list of trial judges, attorneys, persons, associations of persons, firms, partnerships, or corporations that have an interest in the outcome of this particular case or appeal:

Blinken, Antony J., United States Secretary of State, *Defendant-Appellee*

Bloom, Beth, *District Court Judge for the Southern District of Florida*

Boynton, Brian, *Attorney for Defendants-Appellees*

Briggs, Jamie M., *Attorney for Defendants-Appellees*

Carrillo, Charlie, *Attorney for Plaintiff-Appellant*

Enlow, Courtney, *Attorney for Defendants-Appellees*

Garland, Merrick B., Attorney General of the United States, *Defendant-Appellee*

Grenness, Esther Jane S., *Attorney for Plaintiff-Appellant*

Haciski, Rebecca, *Attorney for Defendants-Appellees*

Heinemann, Thomas B., *Defendant-Appellee*

Lapointe, Markenzy, United States Attorney, *Attorney for Defendants-Appellees*

Lewis, Benjamin R., *Attorney for Defendants-Appellees*

Martinelli Berrocal, Ricardo Alberto, *Plaintiff-Appellant*

Monaco, Kerry, *Attorney for Defendants-Appellees*

Swingle, Sharon, *Attorney for Defendants-Appellees*

*Martinelli Berrocal v. Attorney General of the United States*, No. 23-10833 (11th Cir.)

Torres, Edwin G., *Chief Magistrate Judge for the Southern District of Florida*

Yelin, Lewis S., *Attorney for Defendants-Appellees*

Yoder, Todd C., *Attorney for Plaintiff-Appellant*

## STATEMENT REGARDING ORAL ARGUMENT

The district court's decision should be affirmed for the reasons stated by the district court.  Although the government does not believe that oral argument is necessary, it stands ready to present oral argument if the Court would find it useful.

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................. 1

STATEMENT OF JURISDICTION ................................................................... 2

STATEMENT OF THE ISSUES ........................................................................ 2

STATEMENT OF THE CASE ........................................................................... 3

    A.    Legal Background ................................................................................. 3

    B.    Factual Background .............................................................................. 4

    C.    Proceedings Below .............................................................................. 7

    D.    Standard of Review ............................................................................. 8

SUMMARY OF ARGUMENT .......................................................................... 8

ARGUMENT ...................................................................................................... 14

I.    Plaintiff lacks Article III standing to challenge the State Department's communications that the rule of specialty would not apply to Panama's further prosecutions against plaintiff. .................................................... 14

    A.    Plaintiff has not established that Panama's money-laundering prosecutions were caused by the State Department's communications on the rule of specialty. ................................... 15

    B.    Plaintiff has not established that a favorable decision is likely to result in Panama's dismissal of its prosecutions. ...................... 19

II.    Plaintiff lacks a cause of action because the State Department's communications that the rule of specialty no longer applied to plaintiff were committed to agency discretion. ................................................. 26

CONCLUSION .................................................................................................. 32

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

ADDENDUM

# TABLE OF AUTHORITIES

**Cases:**                                                                                                    **Page(s)**

*Allen v. Wright,*
  468 U.S. 737 (1984) ................................................................................. 15, 18

*Belize Telecom, Ltd. v. Government of Belize,*
  528 F.3d 1298 (11th Cir. 2008) ................................................................. 26

*Brownback v. King,*
  141 S. Ct. 740 (2021) ................................................................................. 2

*Citizens to Pres. Overton Park, Inc. v. Volpe,*
  401 U.S. 402, 410 (1971) .......................................................................... 27

*City of South Miami v. Governor,*
  65 F.4th 631 (11th Cir. 2023) ............................................................... 16-17

*Department of Commerce v. New York,*
  139 S. Ct. 2551 (2019) .............................................................................. 27

*Extradition of Ricardo Alberto Martinelli Berrocal, In re,*
  No. 17-22197-Civ-TORRES, 2017 WL 3776953 (S.D. Fla. Aug. 31, 2017) ........... 5

*Federal Trade Comm'n v. Simple Health Plans LLC,*
  58 F.4th 1322 (11th Cir. 2023) ................................................................. 8

*Fujitsu Ltd. v. Federal Express Corp.,*
  247 F.3d 423 (2d Cir. 2001) ..................................................................... 22

*Gallo-Chamorro v. United States,*
  233 F.3d 1298 (11th Cir. 2000) ............................................................ 4, 18

*Haaland v. Brackeen,*
  143 S. Ct. 1609 (2023) .............................................................................. 22

*Harrell v. Florida Bar,*
  608 F.3d 1241 (11th Cir. 2010) ................................................................. 19

*Jacobson v. Florida Sec'y of State,*
  974 F.3d 1236 (11th Cir. 2020) ............... 2, 7, 9, 11, 15, 16, 17, 18, 19, 20, 21, 22, 24

*Khochinsky v. Republic of Poland,*
  1 F.4th 1 (D.C. Cir. 2021) ......................................................................... 29

iv

*Lewis v. Governor of Alabama*,
944 F.3d 1287 (11th Cir. 2019) ..................................................... 10, 16, 19, 20, 21, 22

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992) ..................................................... 10, 15, 21

*Marx v. General Revenue Corp.*,
568 U.S. 371 (2013) ..................................................... 31

*Okpalobi v. Foster*,
244 F.3d 405 (5th Cir. 2001) ..................................................... 26

*Peroff v. Hylton*,
563 F.2d 1099 (4th Cir. 1977) ..................................................... 29

*Simon v. Eastern Ky. Welfare Rights Org.*,
426 U.S. 26 (1976) ..................................................... 15

*Sluss v. U.S. Dep't of Justice, Int'l Prisoner Transfer Unit*,
898 F.3d 1242 (D.C. Cir. 2018) ..................................................... 25

*United States v. Curtiss-Wright Exp. Corp.*,
299 U.S. 304 (1936) ..................................................... 13, 30

*United States v. Diwan*,
864 F.2d 715 (11th Cir. 1989) ..................................................... 28

*United States v. Herbage*,
850 F.2d 1463 (11th Cir. 1988) ..................................................... 4

*United States v. Najohn*,
785 F.2d 1420 (9th Cir. 1986) ..................................................... 4

*United States v. Puentes*,
50 F.3d 1567 (11th Cir. 1995) ..................................................... 8, 14, 24, 27, 28, 29, 31

*United States v. Valencia-Trujillo*,
573 F.3d 1171 (11th Cir. 2009) ..................................................... 3

*Walters v. Fast AC, LLC*,
60 F.4th 642 (11th Cir. 2023) ..................................................... 18

*Weyerhaeuser Co. v. U.S. Fish & Wildlife Serv.*,
139 S. Ct. 361 (2018) ..................................................... 27

*Williams v. Reckitt Benckiser LLC,*
    65 F.4th 1243 (11th Cir. 2023) ....................................................................... 8

*Zivotofsky ex rel. Zivotofsky v. Kerry,*
    576 U.S. 1 (2015) ................................................................................. 13, 30

**Treaty:**

Treaty Between the United States and Panama for the Mutual
    Extradition of Criminals, U.S.-Pan., May 25, 1904, 34 Stat. 2851
    (proclaimed May 12, 1905) ......................................................................... 3
      Art. I ...................................................................................................3
      Art. VI ............................................................................................. 30
      Art. VIII ...............................................................................................4

**Statutes:**

Administrative Procedure Act (APA):
    5 U.S.C. § 701 *et seq.* ................................................................................ 7
      5 U.S.C. § 701(a)(2) ........................................................................... 27
      5 U.S.C. § 706(2)(A) .......................................................................... 26

Declaratory Judgment Act,
    28 U.S.C. § 2201 .................................................................................... 7

18 U.S.C. § 3184 ......................................................................................... 3

18 U.S.C. § 3186 ......................................................................................... 3

28 U.S.C. § 1291 ......................................................................................... 2

**Other Authorities:**

Bureau of Consular Affairs, U.S. Dep't of State, *Visitor Visa,*
    https://perma.cc/CN8P-M3R8 ..................................................................... 5

Restatement (Third) of Foreign Relations Law (Am. Law Inst. 1987)
    § 321 ................................................................................................ 22
    § 477 ............................................................................................ 4, 18
    § 477 cmt. B ....................................................................................... 29

David B. Sweet, *Application of Doctrine of Specialty to Federal Criminal Prosecution of Accused Extradited from Foreign Country*, 112 A.L.R. Fed. 473 (1993) ...................... 25

U.S. Dep't of State, *Foreign Affairs Manual* (2023),
  available at https://fam.state.gov,
  1 FAM 246.9(a)-(b), ................................................................. 4, 24
  7 FAM 1614.1(a)-(b) ............................................................... 4, 24

# INTRODUCTION

At the Republic of Panama's request, the United States extradited plaintiff Ricardo Alberto Martinelli Berrocal to stand trial for the crimes of unlawfully surveilling his political opponents and embezzlement. During his prosecution, the Panamanian court ordered plaintiff not to leave the country. When he was acquitted, Panama lifted his travel restrictions. Rather than leave the country, plaintiff stayed. After plaintiff's acquittal, Panama asked the United States Department of State for its position on whether the "rule of specialty" would apply if Panama were to prosecute plaintiff for other crimes. The rule of specialty is common in extradition treaties. While there are variations depending on the treaty, the rule generally provides that a nation may prosecute an extradited individual only for the crimes for which he was extradited, unless, as relevant here, the surrendering nation consents to prosecution for other crimes, or the individual had an opportunity to leave. The State Department responded to Panama's inquiry by saying that it did not believe that the rule would apply because plaintiff had been free to leave the country after his acquittal. Some months later, Panama began to prosecute plaintiff for money-laundering offenses.

Plaintiff then brought this suit under the federal question statute, the Declaratory Judgment Act (DJA), and Administrative Procedure Act (APA), seeking a declaration that the State Department's communications to Panama were erroneous. As the district court correctly determined, such a challenge is not fit for adjudication. Plaintiff lacks Article III standing to obtain judicial review of the State Department's

communications because he cannot establish that Panama's prosecutions were traceable to the State Department, and plaintiff cannot establish that a favorable decision in this case would result in Panama's termination of its prosecutions. Even if plaintiff had standing, he has no cause of action to challenge the State Department's communications that the rule of specialty no longer applied to him because those communications were committed to the Executive Branch's unreviewable discretion.

## STATEMENT OF JURISDICTION

The district court had jurisdiction to assess its own jurisdiction, *see Brownback v. King*, 141 S. Ct. 740, 750 (2021), including whether plaintiff had standing, *see Jacobson v. Florida Sec'y of State*, 974 F.3d 1236, 1245 (11th Cir. 2020). The district court dismissed the complaint for lack of standing on February 27, 2023. *See* 2-App.191-192. Plaintiff timely appealed. This Court has jurisdiction under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

1. Whether plaintiff has Article III standing to challenge State Department communications that the rule of specialty no longer applied to prosecutions against plaintiff in Panama because Panama lifted plaintiff's travel restrictions following plaintiff's acquittal in the prosecutions for which he was extradited; and

2. Whether plaintiff has a cause of action to challenge the State Department's communications that the rule of specialty no longer applied to Panama's prosecutions against him.

# STATEMENT OF THE CASE

## A.     Legal Background

As in the United States, foreign governments employ state prosecutors to investigate, charge, and prosecute violations of their laws. *See, e.g.*, 1-App.24, 30-31. When a defendant resides within their borders, prosecutors conduct normal business. But when a fugitive has fled to another country, prosecutors often seek extradition of the person. Ordinarily, "a country is under no legal obligation to surrender a fugitive to another country." *United States v. Valencia-Trujillo*, 573 F.3d 1171, 1180 (11th Cir. 2009). But countries may "enter[] into extradition treaties" to facilitate their mutual prosecutorial interests. *Id.*

Panama has a treaty with the United States for the extradition of fugitives who have fled from one jurisdiction to the other. *See* Treaty Between the United States and Panama for the Mutual Extradition of Criminals, U.S.-Pan., May 25, 1904, 34 Stat. 2851 (proclaimed May 12, 1905) (U.S.-Pan. Treaty). That treaty provides that both countries "mutually agree to deliver up persons . . . having been charged with or convicted of" specified crimes, provided that there is sufficient evidence of criminality. *Id.* art. I. As with other extradition treaties, when Panama requests that a person be extradited, and the request is legally sufficient, a magistrate judge reviews whether there is sufficient evidence of the charge under the applicable treaty. *See* 18 U.S.C. § 3184. If there is, the judge issues a certificate to that effect, and the Secretary of State then decides whether to issue a warrant of surrender. *See id.* § 3186.

3

Once a fugitive is extradited, the treaty provides that the requesting country may not prosecute the fugitive "for any crime or offense committed prior to his extradition, other than that for which he was delivered up, until he shall have had an opportunity of returning to the country from which he was surrendered." U.S.-Pan. Treaty, art. VIII. That article exemplifies the rule of specialty, a doctrine "based on international comity" that "stands for the proposition that the requesting state[] . . . can prosecute [a] person only for the offense for which he or she was surrendered . . . or else must allow that person an opportunity to leave." *Gallo-Chamorro v. United States*, 233 F.3d 1298, 1305 (11th Cir. 2000) (first quoting *United States v. Najohn*, 785 F.2d 1420, 1422 (9th Cir. 1986) (per curiam); and then quoting *United States v. Herbage*, 850 F.2d 1463, 1465 (11th Cir. 1988)); *see* Restatement (Third) of Foreign Relations Law § 477 (Am. Law Inst. 1987) (Restatement).

When a nation like Panama considers bringing additional charges against an extradited person, it may choose to consult the State Department for its position on whether the rule of specialty applies. *See* 1 U.S. Dep't of State, *Foreign Affairs Manual* 246.9(a)-(b) (2023) (FAM), available at https://fam.state.gov; 7 FAM 1614.1(a)-(b). In circumstances where the rule of specialty applies, the foreign nation may also choose to request a waiver of the rule from the United States. *See* 2-App.49.

## B. Factual Background

Plaintiff served as the president of Panama for five years. *See* 1-App.17. After he left office, Panama charged him with four counts of unlawfully surveilling political

opponents and others, as well as embezzlement. *See* 1-App.17-18. At the time, plaintiff was present in the United States on a B1/B2 visa, so Panama asked the United States to extradite him for prosecution.[1] *See* 1-App.40, 144. A magistrate judge certified plaintiff's extradition on the four charges. *See In re Extradition of Ricardo Alberto Martinelli Berrocal*, No. 17-cv-22197, 2017 WL 3776953, at *37 (S.D. Fla. Aug. 31, 2017). The State Department issued a warrant authorizing plaintiff's surrender, and informed Panama by diplomatic note that it authorized extradition. *See* 1-App.26. The Department explained that the rule of specialty applied. *See id.*

Plaintiff's prosecution in Panama lasted for five months in 2019. *See* 2-App.9. During the prosecution, the court entered a "[p]ersonal [s]afety [m]easure" that "prevented [plaintiff] from leaving the country" for the duration of the proceedings. *Id.* At the end of the prosecution, the court found plaintiff not guilty. *See* 2-App.10. On August 26, 2019, the court ordered "the personal safety measures [to] be lifted," allowing plaintiff to leave the country. 2-App.9-10. The Panamanian government appealed the lower court's not-guilty verdict, and an appeals court directed that a new prosecution be held on the same charges. *See* 2-App.28-30. Plaintiff was again found not guilty. *See* 2-App.35-47. Nothing in the record in this case reflects any restriction

---

[1] A B1/B2 visa authorizes a noncitizen to enter the United States for business or tourism purposes. *See* Bureau of Consular Affairs, U.S. Dep't of State, *Visitor Visa*, https://perma.cc/CN8P-M3R8.

on plaintiff's ability to leave the country after the personal safety measures were lifted after the initial not-guilty verdict.

Several months after the initial not-guilty verdict, Panamanian officials met with defendant Thomas Heinemann and others at the State Department's Office of Legal Adviser, Office of Law Enforcement and Intelligence. *See* 2-App.53. During the meeting, officials asked whether the rule of specialty continued to apply to plaintiff. *See id.* On December 12, 2019, Heinemann followed up with a letter explaining that the State Department did "not believe that the Rule of Specialty continues to apply under the circumstances of this case" because plaintiff "has been free to travel outside Panama since September 15, 2019," so "Panama is free to further prosecute [plaintiff] without obtaining a waiver of the Rule of Specialty." *Id.* The United States Embassy to Panama later confirmed by diplomatic note that Heinemann "speaks on behalf of the Government of the United States on this issue." 2-App.16-26.

On July 2, 2020, a Panamanian prosecutor charged plaintiff with money laundering while in office. *See* 1-App.29; 2-App.56-63. On August 4, 2020, another prosecutor charged him with money laundering. *See* 1-App.31; 2-App.64-71. Panama began prosecuting plaintiff in one of the money laundering cases on September 12, 2022, and in the other on October 31, 2022. *See* 1-App.35-36. Panama reimposed travel restrictions on plaintiff with the commencement of the first money-laundering prosecution. *See* 2-App.182. But nothing in the record reflects any travel restriction on plaintiff between September 15, 2019, and July 20, 2020.

## C.     Proceedings Below

Plaintiff filed suit in district court against the Attorney General, the Secretary of State, and Thomas Heinemann, *see* 1-App.17-19, alleging that plaintiff is "being prosecuted in two criminal proceedings" in Panama, 1-App.21-22, ¶ 18, because the State Department "advised Panamanian officials that the Rule of Specialty no longer applied" to plaintiff's extradition. *Id.* The complaint asserts claims under the Administrative Procedure Act (APA), *see* 5 U.S.C. § 701 *et seq.*, and the Declaratory Judgment Act (DJA), 28 U.S.C. § 2201, alleging that Heinemann was not authorized to give such guidance, *see* 1-App.36-37, 41, ¶¶ 84-91, 109-112, and that the State Department wrongly decided that the rule of specialty did not apply, *see* 1-App.37-39, 41-42, ¶¶ 92-99, 113-120. Plaintiff asked the district court to set aside the State Department's communications, *see* 1-App.43, ¶ 126, and to declare that the rule of specialty applies to plaintiff's most recent prosecutions, *see id.* ¶ 127.

The district court granted the government's motion to dismiss, concluding that plaintiff lacked Article III standing. *See* 2-App.191. The court reasoned that plaintiff's injuries relating to his prosecution were not traceable to defendants because his prosecution was "the result of the independent action of some third part[ies] not before the court": Panamanian prosecutors who "are ultimately independent officials of another sovereign state who are not subject to the control of any [d]efendant." 2-App.187-188 (quoting *Jacobson v. Florida Sec'y of State*, 974 F.3d 1236, 1253 (11th Cir. 2020)). The court further reasoned that a declaratory judgment in the United States

7

would not redress plaintiff's injuries in Panama because it was "purely speculative" to think that a judgment would "stop the prosecutions in Panama either directly or indirectly." 2-App.189.

In addition, the court concluded that plaintiff could not maintain that the rule of specialty still applies to him because the United States had determined that it does not. The court reasoned that under the rule of specialty, an extradited person could only raise such objections "at the sufferance of the requested nation," *i.e.*, the United States. 2-App.190 (quoting *United States v. Puentes*, 50 F.3d 1567, 1575 (11th Cir. 1995)). The district court concluded that the United States settled the issue when the State Department communicated to Panama the determination that Panama was "free to further prosecute" plaintiff, and the U.S. Embassy in Panama explained that Heinemann's statement was the official position of the United States. 2-App.190-191.

## D.    Standard of Review

"Questions of the litigants' standing may be raised at any time, and are reviewed de novo." *Williams v. Reckitt Benckiser LLC*, 65 F.4th 1243, 1251 (11th Cir. 2023) (emphasis omitted). Other "questions of law are reviewed de novo" as well. *Federal Trade Comm'n v. Simple Health Plans LLC*, 58 F.4th 1322, 1327 (11th Cir. 2023).

## SUMMARY OF ARGUMENT

The district court properly dismissed plaintiff's challenge to the State Department's communications to Panama relaying the State Department's determination that the rule of specialty no longer applied to plaintiff. Plaintiff does

8

not have Article III standing to bring such a challenge, and he identifies no cause of action that would allow him to obtain judicial review of the communications.

1.  Plaintiff lacks Article III standing to challenge the State Department's communications to Panama relaying the State Department's determination concerning the rule of specialty.  Although plaintiff has identified injuries-in-fact—the criminal prosecutions in Panama—he has not established that his ongoing prosecutions are fairly traceable to the defendants' actions or that a favorable judgment is likely to end those prosecutions.

a.  It is well settled that "[t]o satisfy the causation requirement of standing, a plaintiff's injury must be fairly traceable to the challenged actions of the defendant[s], and not the result of the independent action of some third party not before the court."  *Jacobson v. Florida Sec'y of State*, 974 F.3d 1236, 1253 (11th Cir. 2020) (quotation marks omitted).  Plaintiff's foreign prosecutions are quintessential examples of independent sovereign acts undertaken by third parties not before this Court or the district court.  Those proceedings are not fairly traceable to the State Department's communications because foreign prosecutors are not in any way subject to the State Department's control.

Although plaintiff argues that the State Department effectively gave Panama "the go-ahead" to prosecute him, Pl.'s Br. 11-15, he offers no reason to think Panama would have refrained from prosecuting him had it not received the State Department's communications.  Panama, like the United States, had to assess whether

9

the rule of specialty applied to an extradited individual, and Panama, like the United

States, could have determined that plaintiff's ability to leave Panama after his acquittal

made the rule of specialty no longer applicable. Indeed, even if Panama determined

that the rule was still applicable to plaintiff, there is no reason to think that it would

not have just sought a waiver from the United States to pursue further prosecution.

In any case, the fact that Panamanian officials not subject to the State Department's

control independently chose to prosecute plaintiff severs any potential traceable causal

link between the State Department and plaintiff's alleged injuries.

b. For similar reasons, plaintiff has not established that a favorable decision

would redress his foreign prosecutions. Because the State Department does not

control foreign prosecutors, a judgment against defendants is not significantly likely to

end those prosecutions. To the contrary, a favorable decision is unlikely to redress

plaintiff's injuries because whether the prosecutions continue "depends on the

unfettered choices made by independent actors not before the courts and whose

exercise of . . . discretion the courts cannot presume either to control or to predict."

*Lewis v. Governor of Alabama*, 944 F.3d 1287, 1304-05 (11th Cir. 2019) (alteration in

original) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 562 (1992)).

Plaintiff argues that the State Department would have to notify the Panamanian

authorities of any court decision, which he says would lead Panama to abandon the

prosecutions. But such "'notice' theor[ies] of redressability" cannot succeed, as the

"persuasive effect a judicial order might have upon . . . absent nonparties who are not under [defendants'] control[] cannot suffice to establish redressability." *Jacobson*, 974 F.3d at 1254. Plaintiff further suggests that the court can presume that Panama will conform to a declaratory judgment because treaties are binding and must be performed in good faith. But as the district court explained, there is "nothing to ensure that [a non-party] will adhere to a declaratory judgment by the Court that directly or indirectly impacts the parties' relationship as it relates to [a] Treaty." 2-App.189 (quotation marks omitted). Moreover, all declaratory judgments concern binding statutes, regulations, or agreements, so the rule plaintiff advocates would implausibly make any request for a declaratory judgment redressable.

c. Finally, plaintiff argues that, with a declaratory judgment, he would file a motion in Panamanian court to dismiss his criminal cases. But the provision of Panamanian law he identifies for this filing provides only that a criminal process "may be declared void"—not that it will be. 2-App.159. And there is no guarantee that the court would agree with plaintiff's understanding that the rule requires dismissal.

At bottom, plaintiff's suit raises serious diplomatic and comity concerns that underscore the need for proper application of these traceability and redressability principles. His lawsuit appears designed to have U.S. courts compel State Department officials to announce the purported violation of an extradition treaty by Panamanian officials, even though the State Department determined that there is no such violation. Plaintiff's lawsuit also seeks to interfere with a foreign criminal prosecution

11

brought pursuant to a foreign state's independent authority, even though plaintiff acknowledges that he could assert his rule-of-specialty objection directly in those proceedings. Out of respect for the acts of sovereign nations and the limits of Article III, this Court should affirm the district court's dismissal of plaintiff's suit.

2. a. If this Court moves beyond Article III standing, it should affirm the district court's dismissal of plaintiff's suit because plaintiff lacks any cause of action to challenge the State Department's communications that the rule of specialty no longer applies to plaintiff.

Plaintiff identifies only the APA as his cause of action. But that cause of action does not apply to conduct that is committed to agency discretion by law and for which there is no meaningful standard by which a court may evaluate the agency's exercise of discretion. The State Department's communications that plaintiff is no longer subject to the rule of specialty is such an action committed to agency discretion.

In prosecutions in U.S. courts, an individual's rights under an extradition treaty are derivative of the rights of the contracting parties—the countries that have entered into the treaty. Thus, an individual may not assert a violation of the rule of specialty if the requested state has communicated that there is no cause for an objection. In this case, the State Department has made clear in its correspondence to Panamanian officials its determination that the rule of specialty no longer applies to plaintiff in

light of his ability to leave Panama after his acquittal on the charges for which he was extradited. Those communications concerning the United States' rights under the treaty were an exercise of the Nation's foreign affairs powers, which are entrusted to the Executive Branch and are not subject to judicial review. *See, e.g.*, *Zivotofsky ex rel. Zivotofsky v. Kerry*, 576 U.S. 1, 21 (2015) (recognizing the Executive's "unique role in communicating with foreign governments"); *United States v. Curtiss-Wright Exp. Corp.*, 299 U.S. 304, 319 (1936) ("[T]he President alone has the power to speak or listen as a representative of the nation.").

b. Plaintiff appears to argue that the extradition treaty itself provides a legal standard by which courts may evaluate the propriety of the State Department's communications that the rule of specialty no longer applied to plaintiff. He notes that one provision of the treaty between the United States and Panama expressly leaves to government authorities the discretion to determine whether a request for extradition violates a provision prohibiting surrender for prosecution of a political character. According to plaintiff, the provision setting forth the rule of specialty lacks a similarly express direction that relevant determinations are to be made by governmental authorities, plaintiff observes. Plaintiff appears to suggest that this contrast shows that the treaty gives an extradited individual an indefeasible right to challenge a prosecution as a violation of the rule of specialty and that this is sufficient to support plaintiff's cause of action under the APA.

That is not how extradition treaties work. As this Court has explained, an extradited person's rights under an extradition treaty are derivative of the rights of the contracting states, and an extradited person may rely on the treaty's protections "only at the sufferance of the requested nation." *United States v. Puentes*, 50 F.3d 1567, 1574 (11th Cir. 1995). Plaintiff gives no reason to think that the extradition treaty between the United States and Panama is unique among extradition treaties in giving an extradited person a right to assert a treaty-based objection to prosecution by the receiving state despite the requested state's express decision not to object. Plaintiff has therefore identified no law for a court to apply in evaluating his challenge to the State Department's communications to Panama expressing the determination that the rule of specialty no longer applies to him. Plaintiff's failure to identify a viable cause of action is an additional reason that the Court should affirm the district court's dismissal of plaintiff's suit.

## ARGUMENT

I. **Plaintiff lacks Article III standing to challenge the State Department's communications that the rule of specialty would not apply to Panama's further prosecutions against plaintiff.**

As the district court correctly determined, 2-App.181-192, plaintiff lacks Article III standing to challenge the State Department's communications to Panama that the rule of specialty no longer applied to him because plaintiff was free to leave Panama after his acquittal on the crimes for which he was extradited. As is well established, the "irreducible constitutional minimum of standing contains three elements" that a

14

plaintiff must plead and ultimately prove. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Once a plaintiff has identified an "injury in fact," he must allege facts showing that the injury is "fairly traceable to the challenged action of the defendant" and that it is "'likely,' as opposed to merely 'speculative,' that the injury will be redressed by a favorable decision." *Id.* at 560-61 (alterations omitted) (first quoting *Allen v. Wright*, 468 U.S. 737, 756 (1984); and then quoting *Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26, 41 (1976)). Panama's sovereign decision to prosecute plaintiff for money laundering is not traceable to defendants and it is entirely speculative that Panama would halt the prosecutions as a result of a favorable decision in this suit.

### A. Plaintiff has not established that Panama's money-laundering prosecutions were caused by the State Department's communications on the rule of specialty.

1. Although plaintiff objects to his additional criminal prosecutions, he has not shown that those prosecutions in Panama are fairly traceable to the State Department's communications to Panama relaying its determination that the rule of specialty no longer applied to plaintiff.

Plaintiff's prosecutions are independent sovereign acts undertaken by Panamanian officials not before this Court. "To satisfy the causation requirement of standing, a plaintiff's injury must be 'fairly traceable to the challenged action of the defendant[s], and not the result of the independent action of some third party not before the court.'" *Jacobson v. Florida Sec'y of State*, 974 F.3d 1236, 1253 (11th Cir. 2020). As plaintiff acknowledges in his complaint, government prosecutors in

Panama are responsible for bringing criminal charges against defendants and conducting criminal prosecutions. *See* 1-App.29, 31, 36-37. Because the foreign officials responsible for bringing plaintiff's prosecutions are not parties to this dispute, plaintiff lacks standing to maintain this action against the U.S. government defendants. *Jacobson*, 974 F.3d at 1253.

Prosecutions such as those against plaintiff cannot be attributed to the defendant domestic officials because foreign prosecutors are not subject to domestic control. A defendant is not responsible for a prosecution "for purposes of establishing traceability" where those prosecutors are not at least "subject to the . . . control" of the defendant. *Jacobson*, 974 F.3d at 1253-54. Without any enforcement role, a defendant is not a proper cause of the injuries stemming from the foreign prosecutions. *Lewis v. Governor of Alabama*, 944 F.3d 1287, 1299 (11th Cir. 2019) (explaining that the absence of an enforcement role "counts heavily against plaintiffs' traceability argument").

That conclusion is compelled by this Court's precedents. In *Jacobson v. Florida Secretary of State*, plaintiffs sued the Florida Secretary of State on the grounds that "Republicans, not Democrats, appear[ed] first on the ballot in Florida's general elections." *Jacobson*, 974 F.3d at 1253. This Court held that plaintiffs failed to establish causation because the Supervisors of Election responsible for "printing the names of candidates on ballots" were "independent officials under Florida law who are not subject to the Secretary's control." *Id.* Likewise, in *City of South Miami v.*

*Governor*, plaintiffs sued the Florida Governor and Attorney General on the grounds that legislation would lead to police officers "target[ing] their members[] . . . []based on their ethnicity." 65 F.4th 631, 640 (11th Cir. 2023). This Court held that plaintiffs failed to establish causation because the challenged provisions gave "local officials the authority to detain and transport," and the defendants lacked "sufficient control over local law enforcement." *Id.* at 641.

The same reasoning mandated dismissal here. Plaintiff sued various domestic officials alleging that his prosecutions for money laundering in Panama were initiated as a result of the State Department's communications relaying the State Department's determination that the rule of specialty no longer applied to plaintiff. But plaintiff makes no argument for why Panama's prosecutorial decisions should be attributed to the Attorney General of the Department of Justice. And as to the State Department, even if Panamanian officials considered the State Department's determination before deciding to prosecute plaintiff for money laundering, Panama has independent sovereign authority to bring such prosecutions, and its officials are "not subject to the . . . control" of the United States. *Jacobson*, 974 F.3d at 1253. As such, his current prosecutions resulted from Panama's independent actions—not defendants'.

2. Plaintiff argues that "Panamanian officials did not act independently" because they decided to prosecute him "only after receiving Mr. Heinemann's" letter. Pl.'s Br. 14. He contends that the State Department's communications that the rule

of specialty did not apply gave Panamanian officials "the go-ahead" to prosecute plaintiff for money laundering. Pl.'s Br. 13. On plaintiff's view, that distinguishes this case from others in which plaintiffs failed to establish causation, where their injuries were caused by independent actors beyond the defendants' control. Pl.'s Br. 12 (discussing *Jacobson*, 974 F.3d 1236).

But a plaintiff fails to establish causation if the plaintiff "'would have been injured in precisely the same way' without the defendant's alleged misconduct." *Walters v. Fast AC, LLC*, 60 F.4th 642, 650 (11th Cir. 2023). With or without the State Department communications, Panamanian officials had to determine whether Panama's prosecution of plaintiff for money laundering would violate the treaty's rule of specialty provision. And even without the State Department's letter, Panamanian officials could have likewise determined that plaintiff's ability to leave Panama after his acquittal made the rule of specialty no longer applicable. *See Gallo-Chamorro v. United States*, 233 F.3d 1298, 1305 (11th Cir. 2000); *see* Restatement § 477; U.S.-Pan Treaty, Art. VIII. For this reason, it is "speculative" to urge as plaintiff does, Pl.'s Br. 11-15, that Panama's decision to prosecute him is traceable to defendants. *See Allen v. Wright*, 468 U.S. 737, 758 (1984) (holding injury is not traceable to a defendant where causation required "speculative" theories about the conduct of third parties); *City of S. Miami*, 65 F.4th at 645 ("[A] plaintiff lacks standing to sue over a defendant's action if an independent source would have caused him to suffer the same injury." (quoting *Walters*, 60 F.4th at 650-51)).

Moreover, plaintiff does not seriously contend that any U.S. official has the authority to compel Panamanian officials either to prosecute an individual or to cease prosecution. Even if the State Department gave Panamanian officials assurance that the United States would not raise a rule-of-specialty objection to Panama's prosecution of plaintiff for money laundering, Panamanian officials retained discretion to make prosecutorial decisions under Panamanian law. Accordingly, their decision to prosecute plaintiff cannot be attributed to defendants. *See Jacobson*, 974 F.3d at 1253-54 ("Because the Supervisors are independent officials not subject to the Secretary's control, their actions to implement the ballot statute may not be imputed to the Secretary for purposes of establishing traceability."). Because plaintiff has not established that Panama's decision to prosecute him is traceable to defendants, the district court properly dismissed his suit for lack of standing.

**B. Plaintiff has not established that a favorable decision is likely to result in Panama's dismissal of its prosecutions.**

1. For similar reasons, a judgment for plaintiff also would not redress his ongoing prosecutions. A favorable decision must "significant[ly] increase . . . the likelihood" that the plaintiff "would obtain relief that directly redresses the injury." *Lewis*, 944 F.3d at 1301 (alterations in original) (quoting *Harrell v. Florida Bar*, 608 F.3d 1241, 1260 n.7 (11th Cir. 2010)). Plaintiff requests that the court set aside the State Department's letter to Panamanian officials and enter a declaratory judgment that the rule of specialty still applies to Panama's ongoing prosecutions. *See* 1-App.42-43. But

plaintiff has provided no reason to think that such relief would have the effect of ending those prosecutions.

As explained, defendants do not control Panama's prosecutorial decisions. Accordingly, a judgment against defendants "cannot provide redress, for neither [defendants] nor [their] agents control" the conduct that inflicts plaintiff's injury. *Jacobson*, 974 F.3d at 1254. Instead, third-party Panamanian officials control whether to continue prosecutions in Panama under Panamanian law. As nonparties, a judgment would not "bind" them, and they would not be "obliged . . . in any binding sense . . . to honor an incidental legal determination [this] suit produce[s]." *Id.* (alterations in original) (quoting *Lewis*, 944 F.3d at 1302). Plaintiff's requested relief is not directed at those who have the authority to decide whether to continue his prosecution, so even if a court granted that relief, it would not redress the injury plaintiff alleges.

2. Plaintiff suggests that a judgment against defendants would indirectly lead to Panama's ending his prosecution. *See* Pl.'s Br. 15-21. But even when a plaintiff relies on an indirect theory of redressability, a plaintiff must show that the effect of a favorable decision on the actual defendant to the suit will redress the plaintiff's injury. *See Lewis*, 944 F.3d at 1301 ("[I]t must be *the effect of the court's judgment on the defendant*— not an absent third party—that redresses the plaintiff's injury, whether directly or indirectly.") (quotation marks omitted). Indirect theories of redressability are "ordinarily substantially more difficult to establish" because they "depend[] on the

unfettered choices made by independent actors not before the courts and whose

exercise of . . . discretion the courts cannot presume either to control or predict." *Id.*

at 1304-05 (second alteration in original) (quoting *Lujan*, 504 U.S. at 562).  Plaintiff

has not established that a favorable decision would indirectly redress his alleged injury.

a.  Plaintiff primarily argues that a favorable decision would end his criminal

case because it would "deem unlawful the agency actions by Mr. Heinemann and the

U.S. Department of State," thereby "reinstating the protections afforded to [plaintiff]

by the Rule of Specialty."  Pl.'s Br. 17.  But that is no explanation for why a judgment

against the Attorney General would redress plaintiff's injury.  And as to the State

Department officials, while a judgment in plaintiff's favor would contradict the

determination in the State Department's communications advising Panama that the

rule of specialty no longer applies, Panama would still be under no legal obligation to

end plaintiff's prosecutions.  *See Jacobson*, 974 F.3d at 1254.  Again, it is entirely

speculative to think that Panama would terminate its prosecutions based on a

determination by a U.S. court that the State Department's letter was unlawful.

Plaintiff further speculates that the State Department would "notify the

Panamanian authorities" of the Court's decision.  Pl.'s Br. 19-20.  But if that were

enough to establish redressability, courts could assume that when informed,

"everyone (including those who are not proper parties to an action) w[ould] honor the

legal rationales that underlie their decrees, then redressability w[ould] always exist."

*Lewis*, 944 F.3d at 1305 (emphasis omitted).  Such "'notice' theor[ies] of redressability" cannot succeed, as "[a]ny persuasive effect a judicial order might have upon . . . absent nonparties who are not under [defendants'] control[] cannot suffice to establish redressability."  *Jacobson*, 974 F.3d at 1254; *see Haaland v. Brackeen*, 143 S. Ct. 1609, 1639 (2023) ("[R]edressability requires that the court be able to afford relief *through the exercise of its power*, not through the persuasive or even awe-inspiring effect of the opinion *explaining* the exercise of its power.") (quotation marks omitted).

Plaintiff argues that a different rule applies when a court opines about the meaning of an international treaty.  *See* Pl.'s Br. 18-19.  He posits that a court may presume that Panama will conform to a declaratory judgment about the treaty because when nations enter into a treaty agreement, that treaty becomes "binding" and "must be performed by them in good faith."  *Fujitsu Ltd. v. Federal Express Corp.*, 247 F.3d 423, 433 (2d Cir. 2001) (quoting Restatement § 321).  But that argument proves too much.  All declaratory judgments involve the interpretation of binding statutes, regulations, or agreements.  *See, e.g., Jacobson*, 974 F.3d at 1254 (state statute); *Lewis*, 944 F.3d at 1304-05 (same).  Thus, under plaintiff's theory, merely asking for a declaratory judgment would establish redressability.  That is not the law.  *See Lewis*, 944 F.3d at 1305.  As the district court explained, that Panama is obligated to act under a treaty in good faith "does nothing to ensure [it] will 'adhere to a declaratory judgment by the Court that directly or indirectly impacts the parties' relationship as it relates to the Treaty.'"  2-App.189.  As nonparties to this litigation, Panamanian

officials are not bound by this Court's interpretation of the treaty and are free to conclude, as did the State Department, that plaintiff's freedom to leave Panama after his acquittal on the charges for which he was extradited renders the rule of specialty inoperative.

b.  Plaintiff separately argues that a favorable decision will end his prosecution because, armed with a declaratory judgment from the district court, he would file a motion in Panamanian court to dismiss his criminal case under Article 548 of the Procedural Penal Code of the Republic of Panama.  *See* Pl.'s Br. 17-18.  As relevant here, that article provides that a criminal process "may be declared void" if an extradited person is prosecuted "for any crime committed before . . . their surrender that is not the same for which they were extradited, unless" the surrendering state has "given its consent," the extradited person "had the opportunity to voluntarily leave the territory of the Republic of Panama," or the extradited person "waived his right." *See* 2-App.159.

The possibility of such a motion cannot serve as the basis for redressability because whether the Panamanian courts would resolve the motion in plaintiff's favor is entirely speculative.  Article 548 only provides that a prosecution "may be declared void"—not that it shall be—if the rule of specialty is violated.  *See* 2-App.159.  And it contemplates that a case will not be dismissed either where a surrendering state gave its "consent" to prosecution or the extradited person "had the opportunity to

voluntarily leave" after his prior proceedings concluded. *See id.* As explained, plaintiff did have an opportunity to leave, and a Panamanian court could reasonably conclude that the State Department's communications that the rule of specialty no longer applies to plaintiff could qualify as consent within the meaning of Article 548. Moreover, even if a Panamanian court concluded that the rule of specialty still applies, it is possible that Panama would ask the United States to waive the rule and that the United States would do so. *See United States v. Puentes*, 50 F.3d 1567, 1575 n.5 (11th Cir. 1995) ("The requested state's waiver of a treaty provision may occur either contemporaneously with the extradition or after the defendant has been surrendered to the requesting state.").[2]

3. At bottom, plaintiff's civil suit raises serious diplomatic and comity concerns that underscore the need for the proper application of traceability and redressability principles. *Cf. Jacobson*, 974 F.3d at 1257 (rejecting theory of standing with "serious federalism concerns"). His lawsuit appears designed to have a U.S. court announce

---

[2] Plaintiff contends that Heinemann lacked authority to communicate the United States' determination that the rule of specialty no longer applies to plaintiff, *see* Pl.'s Br. 13, and that the U.S. Embassy's diplomatic note to Panama confirming that Heinemann's letter states the views of the United States came too late because plaintiff's rights under the rule of specialty had already been violated, Pl.'s Br. 35. Those are merits questions the Court should not address. In any event, Heinemann had full authority to convey the State Department's views to Panama. *See, e.g.*, 1 FAM 246.9(a)-(b); 7 FAM 1614.1(a)-(b). And because a requested state may consent to a prosecution not within the scope of an extradition order after the extradition has occurred, *Puentes*, 50 F.3d at 1575 n.5, any question about the United States' position was resolved by the U.S. Embassy's diplomatic communication.

the purported violation of an extradition treaty by Panamanian officials, *see* Pl.'s Br. 19-21, enlisting the district court to superintend how the State Department exercises its discretion to monitor performance under that agreement. However, "[t]raditionally, courts tread lightly in matters involving foreign affairs, giving due consideration to the government's understanding of its related obligations." *Sluss v. U.S. Dep't of Justice, Int'l Prisoner Transfer Unit*, 898 F.3d 1242, 1250 (D.C. Cir. 2018). This Court should reject plaintiff's invitation to second-guess the State Department's communications that the rule of specialty no longer applied to Panama's decisions concerning plaintiff's prosecution—which, as discussed below, is a foreign policy activity committed to the Executive Branch.

That course is especially prudent here, where plaintiff's suit encourages the court to compel U.S. officials to interfere in an ongoing prosecution in a foreign country. In a typical prosecution for an extradited person in the United States, the defendant raises the rule of specialty in the course of the criminal proceedings following extradition. *See, e.g.*, David B. Sweet, *Application of Doctrine of Specialty to Federal Criminal Prosecution of Accused Extradited from Foreign Country*, 112 A.L.R. Fed. 473 (1993) (collecting cases). Indeed, plaintiff has identified a means for him to do so in his criminal proceedings in Panama—Article 548. *See* 2-App.159. This civil suit attempts an end-run around that process. Out of "respect for the acts of sovereign nations," and the limits of Article III, this Court should affirm the dismissal for lack

of standing. *Belize Telecom, Ltd. v. Government of Belize*, 528 F.3d 1298, 1305 (11th Cir. 2008).

## II. Plaintiff lacks a cause of action because the State Department's communications that the rule of specialty no longer applied to plaintiff were committed to agency discretion.

Even were the Court to conclude that plaintiff has Article III standing, it should affirm the dismissal of plaintiff's suit because plaintiff lacks any cause of action to challenge the State Department's communication that the rule of specialty does not apply to a prosecution. *See* 2-App.190-191. That communication is committed to agency discretion.

A. Plaintiff's complaint asserts seven causes of action seeking declaratory relief. *See* 1-App.36-42. As an initial matter, none of plaintiffs' causes of action allege any wrongdoing by the Department of Justice, 1-App 36-42, which is a basis for affirming the district court's judgment with respect to the Attorney General. And regardless, the Declaratory Judgment Act does not provide a cause of action. *See, e.g.*, *Okpalobi v. Foster*, 244 F.3d 405, 423 n.31 (5th Cir. 2001) (en banc) ("[T]he law makes clear that—although the Declaratory Judgment Act provides a *remedy* different from an injunction—it does not provide an additional cause of action with respect to the underlying claim."). The only other cause of action plaintiff's complaint identifies is the one created by the APA. *See* 1-App.19; 5 U.S.C. § 706(2)(A). However, the APA's cause of action does not apply to actions that are committed to agency

discretion by law, *see* 5 U.S.C. § 701(a)(2), and for which where there is "no meaningful standard against which to judge the agency's exercise of discretion," and therefore "no law to apply," *Department of Commerce v. New York*, 139 S. Ct. 2551, 2568-69 (2019) (first quoting *Weyerhaeuser Co. v. U.S. Fish & Wildlife Serv.*, 139 S. Ct. 361, 370 (2018); and then quoting *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 410 (1971)). A communication that the rule of specialty no longer applies to prosecution for crimes not within the scope of an extradition request is such an action committed to agency discretion, because purported violations of extradition agreement are cognizable only "at the sufferance of the requested nation." *Puentes*, 50 F.3d at 1575.

In U.S. courts, rule-of-specialty challenges typically arise in the context of prosecution of persons extradited to the United States to face criminal charges here. In that context, this Court has held that extradited defendants may "raise any objections which the requested nation might have asserted" under the extradition treaty. *Puentes*, 50 F.3d at 1575. "The doctrine of specialty is . . . one of the provisions of [an extradition treaty]," and "even in the absence of a protest from the requested state, an individual extradited pursuant to a treaty" may challenge the person's prosecution as a violation of that rule. *Id.* at 1574. But "the rights conferred under the [extradition treaty] ultimately belong to the contracting parties, the signatory nations." *Id.* Accordingly, "[t]he individual's rights are derivative of the rights of the requested nation." *Id.* Thus, "the individual may enjoy these protections [under an extradition treaty] only at the sufferance of the requested nation." *Id.* For example,

"the requested nation may waive its right to object to a treaty violation," in which case the defendant has no "standing to object" to the prosecution as a violation of the rule-of-specialty provision of an extradition treaty.[3] *Id.* at 1575. Plaintiff recognizes that the waiver of a violation of the rule would be conclusive. *See* Pl.'s Br. 23-24.

It also follows that a nation's determination that a waiver would not be necessary, because the rule is not applicable, is conclusive. This Court's decision in *United States v. Diwan* is illustrative. In *Diwan*, a criminal defendant extradited to the United States from Great Britain moved to dismiss his conspiracy charge under the rule of specialty on the grounds that he had been extradited only on "theft-related offenses." *United States v. Diwan*, 864 F.2d 715, 720 (11th Cir. 1989) (per curiam). The Court held that the defendant's challenge was foreclosed because Great Britain sent a letter to the United States confirming that the "surrender warrant[] . . . authorized the prosecution of Diwan on all counts, including the conspiracy count." *Id.* at 720-21. Because "the Secretary of State for the Home Office confirm[ed] that Great Britain" did "not regard the prosecution of Diwan on the conspiracy count of the indictment as a breach of the extradition treaty," or "as an affront to its sovereignty," Diwan could not raise objections under the rule of specialty. *Id.* The Court made clear that the defendant's "interpretation [of the treaty] to the contrary" was "not relevant." *Id.*

---

[3] Although this Court has referred to an extradited person's "standing" to assert the rule of specialty, what is at issue is a substantive "right[]" conferred by an extradition treaty "on a non-party who is the object of the contract." *Puentes*, 50 F.3d at 1574.

In this case, plaintiff contends that Panama's prosecution of him on money-laundering charges violates the rule of specialty in the extradition treaty between the United States and Panama. *See* 1-App.23-24. The standard for evaluating a rule-of-specialty challenge is generally "whether the requested state has objected or would object to prosecution," Restatement § 477 cmt. b, which again, takes place at "the sufferance of the requested nation," *Puentes*, 50 F.3d at 1575. Here, the State Department has made clear in its correspondence to Panamanian officials its determination that the rule-of-specialty no longer applies to plaintiff in light of his ability to leave Panama after his acquittal on the charges for which he was extradited. *See* 2-App.19. That formal decision by the branch of government charged with the conduct of the nation's foreign affairs and its correspondence with foreign states is determinative of the United States' position about whether to assert any violation of the United States' rights under the extradition treaty with Panama with respect to any further prosecution Panama might bring against plaintiff. *Cf. Peroff v. Hylton*, 563 F.2d 1099, 1102 (4th Cir. 1977) (per curiam) ("[M]atters involving extradition have traditionally been entrusted to the broad discretion of the executive. . . . The need for flexibility in the exercise of Executive discretion is heightened in international extradition proceedings which necessarily implicate the foreign policy interests of the United States."); *see also Khochinsky v. Republic of Poland*, 1 F.4th 1, 9 (D.C. Cir. 2021) (noting "extradition's fundamentally diplomatic, executive character"). And communications relaying that determination were exercises of the Nation's foreign

affairs powers entrusted to the Executive Branch and not subject to judicial review. *See, e.g.*, *Zivotofsky ex rel. Zivotofsky v. Kerry*, 576 U.S. 1, 21 (2015) (recognizing the Executive's "unique role in communicating with foreign governments"); *United States v. Curtiss-Wright Exp. Corp.*, 299 U.S. 304, 319 (1936) ("[T]he President alone has the power to speak or listen as a representative of the nation.").

B.  Plaintiff appears to argue that the extradition treaty itself provides a standard by which a court may evaluate whether the State Department properly determined that the rule of specialty no longer applies to him.  Pl.'s Br. 26-33. Plaintiff notes that Article VI of the treaty expressly leaves it to "the authorities of the government on which the demand for surrender is made" to determine whether a request for extradition violates a treaty provision prohibiting surrender for prosecution "of a political character."  Pl.'s Br. 27 (quoting U.S.-Pan. Treaty, art. VI). Plaintiff observes that Article VIII, the provision setting out the rule of specialty, does not similarly contain an express provision leaving to government authorities the discretion to determine whether the extradited person has had an opportunity to return to the sending country, thus rendering the rule of specialty inapplicable.  Pl.'s Br. 28.  From this, plaintiff appears to argue that the extradition treaty between the United States and Panama gives extradited individuals an indefeasible right to challenge a prosecution as violation of the rule against specialty.  Pl.'s Br. 28-33.  And that supposed individual right, plaintiff seems to suggest, is sufficient to support plaintiff's cause of action under the APA.  Pl.'s Br. 33.

But plaintiff identifies no precedent—and we are aware of none—holding that an extradited person may challenge a requesting state's prosecution as a violation of the rule of specialty notwithstanding the requested state's determination that the rule no longer applies. *Cf. Puentes*, 50 F.3d at 1574 ("[T]he [extradited] individual may enjoy these protections [under an extradition treaty] only at the sufferance of the requested nation."). Plaintiff also gives no reason to think that the extradition treaty between the United States and Panama is unique among extradition treaties in giving extradited persons an indefeasible right to challenge a requesting state's prosecution as a violation of the treaty notwithstanding the requested state's express decision that there is no cause for an objection. *See Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 381 (2013) ("The force of any negative implication . . . depends on context.").

Plaintiff then argues that the relevant question "is not whether the United States would object" to Panama's current prosecution "but whether the U.S. Department of State and Mr. Heinemann followed the appropriate procedures when submitting letters to Panamanian officials stating that the Rule of Specialty no longer applied." Pl.'s Br. 33. He then asserts, without any elaboration or citation to the record or to controlling law, that "[p]roper procedures were not adhered to in Pres. Martinelli's case." Pl.'s Br. 34. Plaintiff identifies nothing in the treaty or agency guidelines that prescribe the process by which the contracting states should determine whether a treaty provision is applicable or undertake communications concerning the treaty. Plaintiff has therefore identified no law to apply in evaluating his challenge to

the State Department's communication to Panama expressing the United States' view that the rule of specialty no longer applied to him. Plaintiff's failure to identify a viable cause of action is an additional reason that the Court should affirm the district court's dismissal of plaintiff's suit.

## CONCLUSION

For the foregoing reasons, the judgment of the district court should be affirmed.

Respectfully submitted,

BRIAN M. BOYNTON
*Principal Deputy Assistant Attorney General*

SHARON SWINGLE
LEWIS S. YELIN

*s/ Ben Lewis*
BEN LEWIS
*Attorneys, Appellate Staff*
*Civil Division, Room 7250*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, DC 20530*
*(202) 514-2494*
*benjamin.r.lewis@usdoj.gov*

July 2023

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 7985 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in Garamond 14-point font, a proportionally spaced typeface.

*s/ Ben Lewis*
Ben Lewis

## CERTIFICATE OF SERVICE

I hereby certify that on July 14, 2023, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Eleventh Circuit by using the appellate CM/ECF system. Service will be accomplished by the appellate CM/ECF system.

_s/ Ben Lewis_
Ben Lewis

**ADDENDUM**

# TABLE OF CONTENTS

Treaty Between the United States and Panama for the Mutual Extradition of Criminals, U.S.-Pan., May 25, 1904, 34 Stat. 2851 (proclaimed May 12, 1905)

Article I ................................................................................................................. A1

Article VI ............................................................................................................... A1

Article VIII ............................................................................................................. A1

## Treaty Between the United States and Panama
## for the Mutual Extradition of Criminals

U.S.-Pan., May 25, 1904, 34 Stat. 2851 (proclaimed May 12, 1905)

## Article I

The Government of the United States and the Government of the Republic of Panamá mutually agree to deliver up persons who, having been charged with or convicted of any of the crimes and offenses specified in the following article, committed within the jurisdiction of one of the contracting parties, shall seek an asylum or be found within the territories of the other: Provided, that this shall only be done upon such evidence of Criminality as, according to the laws of the place where the fugitive or person so charged shall be found, would justify his or her apprehension and commitment for trial if the crime or offense had been there committed.

\*\*\*

## Article VI

A fugitive criminal shall not be surrendered if the offense in respect of which his surrender is demanded be of a political character, or if he proves that the requisition for his surrender has, in fact, been made with a view to try or punish him for an offense of a political character. No person surrendered by either of the high contracting parties to the other shall be triable or tried, or be punished, for any political crime or offense, or for any act connected therewith, committed previously to his extradition. If any question shall arise as to whether a case comes within the provisions of this article, the decision of the authorities of the government on which the demand for surrender is made, or which may have granted the extradition, shall be final.

\*\*\*

## Article VIII

No person surrendered by either of the high contracting parties to the other shall, without his consent, freely granted and publicly declared by him, be triable or tried or be punished for any crime or offense committed prior to his extradition, other than that for which he was delivered up, until he shall have had an opportunity of returning to the country from which he was surrendered.